**In re the AUGUST, 1993 REGULAR GRAND JURY. (MEDICAL CORPORATION SUBPOENA I).**

**Misc. No. 93–63.**
**Grand Jury Subpoena No. KMS–41–02.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 10, 1994.

---

Richard L. Darst, Mantel Cohen Garelick Reiswerg & Fishmann, Indianapolis, IN, for Subpoenaed Medical Corp.

Kathleen M. Sweeney, Asst. U.S. Atty., Office of the U.S. Atty., Indianapolis, IN, for Government.

## Entry Regarding United States' Supplemental Motion to Reconsider Court's Order Regarding Grand Jury Subpoena

TINDER, District Judge.

■ This is the second time issues surrounding the grand jury subpoena (No. KMS–41–02) of [the Corporation][1] have been brought before this court. The first excursion was generated by [the Corporation's] Motion to Quash the subpoena, resulting in an order which denied the motion but modified the subpoena. *See In re August, 1993 Grand Jury*, 854 F.Supp. 1392, Entry Denying Mot. to Quash, Denying Mot. for Protective Order & Modifying Subpoena, Misc. No. 93–63 (S.D.Ind. Nov. 24, 1993) (hereinafter *"[Corporation] Grand Jury I"*).[2] Modification was necessary because the subpoena sought materials protected by a psychotherapist-patient privilege, an evidentiary privilege with a rather stormy history but nonetheless applicable under the circumstances of this case. Though only a narrow category of information was to benefit from this privilege, the order did exempt—consistent with the scope of the privilege—[the Corporation] from disclosing "detailed patient histories and notes of counseling sessions which reflect confidential communications between the psychotherapist and patient...." *Id.* at 1397. Apparently dissatisfied with the ruling in *[Corporation] Grand Jury I*, the Government asks the court to reconsider that decision essentially because it believes the protected information is *really* necessary to continue its investigation and, presumably, to persuade the grand jury to indict the targets of the investigation.[3] The Government's argument is fairly subject to two interpretations.[4] Either it simply believes the court's

---

1. To preserve both the secrecy of the grand jury investigation and the privacy of those being investigated by the grand jury, all names, titles, or references in this entry which might in any manner identify those subject to investigation have been replaced with non-identifying, generic terms. Each substitution in the original text, made for the purposes of publication, is contained within brackets ([ ]).

2. Included in the first entry is a detailed recital of the background surrounding this subpoena and the investigation of [the Corporation] by the grand jury. To avoid repetition, the parties should refer to that document for any necessary factual information. Familiarity with the contents of that entry is assumed and are incorporated into this decision.

3. Procedurally, the Government filed, and the court granted on February 7, 1994, what the Government now recognizes was a Motion for Leave to File Motion to Reconsider. On March 3, 1994, subsequent to the submission of briefs from both parties on this motion, the Government filed under seal "new" evidence which seeks the court to consider in ruling on the motion. The following day the court entered an order sealing the evidence from disclosure to [the Corporation]. Although [the Corporation] vehe-

mently protests the sealing of the evidence, and moves to strike the Government's submission, this satellite dispute need not be addressed because, in resolving this motion, regardless of the substantive import of the "new" evidence, the Government's motion fails.

4. Or maybe three interpretations. If, in this motion, the Government is actually requesting the court to decide that the privilege does not protect a psychotherapist's notes which merely indicate medication was renewed or prescribed, it already has what it seeks in the *[Corporation] Grand Jury I* decision. There the court held the privilege only protects notes that reflect confidential communications—a category into which a simple note regarding prescribed medicine would probably not fall. Nor does the privilege protect the physical circumstances of the records which might be indicative of the length of the notes. For instance, the Government could request all the patient records, allow the psychotherapist to redact or "black-out" all confidential patient communications contained in those records, but possibly still be able to discern the length of the notes based upon the size of the blacked-out portion. No protected information would be divulged and the Government gets what it purportedly wants—some indication of the length of [the

previous decision, which balanced the need for the psychotherapist's notes with the need to protect the psychotherapist-patient relationship, struck the balance on the wrong side of the scales, or, alternatively, it might be arguing that the advent of "new" evidence commands the court to re-think the earlier modification. Which interpretation is precisely correct turns out to be of minor importance, for the Government cannot prevail under either because it fails to forward sufficient grounds to support a motion to reconsider.

■ Despite [the Corporation's] pleas to the contrary, motions to reconsider are not ill-founded step-children of the federal court's procedural arsenal, but rather effective yet quite circumscribed methods of "correct[ing] manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.1987) (quoting *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656, 665–66 (N.D.Ill.1982), *aff'd,* 736 F.2d 388 (7th Cir.1984)), *amended on other grounds,* 835 F.2d 710 (7th Cir.1987). A third limited basis for granting a motion to reconsider, noted by this court in *Fisher v. National R.R. Passenger Corp.*, 152 F.R.D. 145 (S.D.Ind.1993), concerns those situations in which the merits of an issue vital to the litigation were never addressed because of a litigant's non-culpable procedural default. *Id.* at 149. In this infrequently occurring instance, "[w]here a previous error is the result of negligence or other non-culpable conduct, and when a motion involves important issues which may effect the outcome of a case ... the dispute is better decided on the merits than on procedural grounds." *Id.* Despite being appropriate in these three circumstances, motions to reconsider are extraordinary in nature and, because they run contrary to notions of finality and repose, should be discouraged. *See United States v. All Assets & Equip. of West Side Bldg. Corp.*, 843 F.Supp. 377, 384–85 (N.D.Ill. 1994) ("Motions for reconsideration are not a matter of routine practice in this jurisdiction.").

This disfavored status is due largely to the fact that reconsideration of past rulings competes with an equally important, and equally discretionary principle known as the "law of the case" doctrine. Simply put, this doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (Holmes, J.). Some formulations of this doctrine express a quite limited set of circumstances in which a court can review prior decisions. *E.g., Barrington Press, Inc. v. Morey*, 816 F.2d 341, 343 n. 2 (7th Cir.) ("The law of the case doctrine precludes reconsideration of a matter already decided 'unless one of three exceptional circumstances exists: the evidence in a subsequent trial was substantially different; controlling authority has since made a contrary decision of law applicable to such issues; or the decision was clearly erroneous, and would work a substantial injustice.' "), *cert. denied sub. nom Morey v. Barrington Press, Inc.*, 484 U.S. 906, 108 S.Ct. 249, 98 L.Ed.2d 207 (1987). Other formulations appear a little less strict. *E.g., Messinger*, 225 U.S. at 444, 32 S.Ct. at 740; *Johnson v. Burken*, 930 F.2d 1202, 1207 (7th Cir.1991) ("[A] court will ordinarily not reconsider its own decision made at an earlier stage of the trial ... absent clear and convincing reasons to examine the prior ruling."). At bottom, however, a court is neither obligated nor foreclosed from reconsidering its prior decisions; instead, the principles underlying motions to reconsider and the law of the case doctrine must be meted out in the individual case to arrive at a proper exercise of the court's discretion. *Cf. United States v. Mazak*, 789 F.2d 580, 581 (7th Cir.1986) ("The doctrine of law of the case is flexible.... It will not be enforced where doing so would produce an injustice."); *Champaign–Urbana News Agency, Inc. v. J.L. Cummins News Co.*, 632 F.2d 680, 683 (7th Cir.1980) ("To modify the law of the case is primarily a matter of 'good sense.' ").

psychotherapist's] notes during treatment sessions. If the Government has sought this sort of material but [the psychotherapist] has refused to divulge it, maybe this is really a grand jury

subpoena enforcement problem, not a substantive quarrel with the court's decision in *[Corporation] Grand Jury I.*

So, while a court can always take a second look at a prior decision, *In re 949 Erie Street,* 824 F.2d 538, 541 (7th Cir.1987) (interlocutory orders "may be changed by the district court at any time prior to final judgment."), it need not and should not do so in the vast majority of instances. There is a clear course for the Government to take to correct a court's errors relating to a grand jury subpoena—appeal. *See* 18 U.S.C.A. § 3731 (1988); *In re Special Sept. 1978 Grand Jury,* 640 F.2d 49, 55 (7th Cir.1980). Of course this court does not wish to encourage needless appeals on matters best and most quickly corrected in the district court, and, the court is quite cognizant of the need for timeliness and efficiency in resolving disputes surrounding grand jury proceedings. However, motions to reconsider which merely restyle or re-hash the initial issues are a needless drain on the court's resources. Except in three limited circumstances, all mentioned above but only two of which are raised and thus discussed below, this tactic is simply improper and should not be employed.

■ First, while motions to reconsider exist to correct manifest errors in law, they are "not appropriate vehicles to again advance arguments already rejected by the court." *All Assets,* 843 F.Supp. at 385. Foregoing a deep look into the merits of the Government's assignment of error to the previous decision—an allowable procedure in deciding whether to grant a motion to reconsider, *Paganis v. Blonstein,* 3 F.3d 1067, 1073 n. 7 (7th Cir.1993)—apparent from the outset is the Government's failure to propose argument or authority suggesting the *[Corporation] Grand Jury I* decision was replete with "manifest error of law." *Publishers Resource, Inc.,* 762 F.2d at 561. Paramount in deciding whether to recognize a psychotherapist-patient privilege, or any evidentiary privilege for that matter, is a weighing of "the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case." *Memorial Hosp. v. Shadur,* 664 F.2d 1058, 1061–62 (7th Cir.1981) (quoting *Ryan v. Commissioner of Internal Revenue,* 568 F.2d 531, 543 (7th Cir.), *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978)). The first entry involved just this sort of delicate balancing, assessed both the importance of the subpoenaed information and the psychotherapist-patient relationship, and ultimately determined the privilege should protect a narrow category of information composed of "detailed patient histories and notes of counseling sessions which reflect confidential communications between the psychotherapist and patient." Because it attributes great significance (or at least greater than the court assigned) to the information sought from [the Corporation], the Government asks the court to re-strike this balance, to reweigh the competing interests (this time in its favor) and to confess error in the earlier decision.[5] This simply asks too much in light of the paucity of support offered by the Government. A "manifest error in law" means more than a quibble over the proper application or interpretation of legal authority; it requires no less than a wholesale disregard, misapplication, or failure to recognize controlling precedent. And, to convince the court to reconsider a prior decision, the movant must adequately allege exactly this sort of failure. Having once thoroughly analyzed this problem, and lacking a compelling presentation by the Government indicative of a "manifest error in law," the

---

5. The Government's allegation that the *[Corporation] Grand Jury I* decision erroneously relied on state law, rather than the common law, in construing and applying the psychotherapist-patient privilege is simply incorrect and based on a misinterpretation of the previous entry. A close reading of *[Corporation] Grand Jury I* clearly demonstrates that the common-law regarding the psychotherapist-patient privilege provided the basis for applying and construing the privilege in this case, as required under Federal Rule of Evidence 501. *[Corporation] Grand Jury I,* 854 F.Supp. at 1396 ("Existence of this privilege under Indiana law supports, but does not control, the existence of the privilege under federal law and the court must instead independently analyze the Corporation's claim of privilege."). The applicability of some exception to the privilege contained in Indiana law, as the Government now argues, would have been relevant in the prior decision if the Government had raised it. Unfortunately it did not and does not now deserve a second chance to raise an argument it could have previously brought forward. *DeBruyne v. Equitable Life Assur. Soc.,* 920 F.2d 457, 471 (7th Cir.1990).

costs of revisiting this matter in terms of time and resources required greatly outweigh the little benefit, discounted by the low probability of an incorrect earlier decision, possibly gained by a *de novo* analysis.

■■■ Second, it is equally inappropriate to employ a motion to reconsider to proffer a new legal theory or new evidence to support a prior argument when the legal theory or evidence could, with due diligence, have been discovered and offered during the initial consideration of the issue. *DeBruyne v. Equitable Life Assur. Soc.*, 920 F.2d 457, 471 (7th Cir.1990); *Rothwell*, 827 F.2d at 252; *Publishers Resource v. Walker–Davis Pub.*, 762 F.2d 557, 561 (7th Cir.1985). Into this category falls most of the "new" evidence the Government offers to support its motion. Under seal the Government filed the written report of a cooperating witness' interview with a federal agent, the transcript of a grand jury witness' testimony, and photocopies of some documents and records obtained from [the Corporation's] garbage. Remembering that "new evidence," as the term is employed in the standard for granting motions to reconsider, does not include evidence that "could, with due diligence, have been discovered and offered during the initial consideration of the issue," *DeBruyne*, 920 F.2d at 471, this testimony and statement flatly fail to justify granting a motion to reconsider. While [the Corporation's] office manager, did not testify before the Grand Jury until January, 1994—well after the decision in *[Corporation] Grand Jury I*—nothing indicates her existence was unknown to the Government, or with due diligence could not have been discovered, prior to or during the briefing on that motion. The same is true of the Government's cooperating witness, a [Corporation] employee during the time period being investigated by the Grand Jury; although her statement to investigators followed the decision in *[Corporation] Grand Jury I*, nothing indicates Government investigators either did not know she existed, or with due diligence could not have discovered her, during the pendency of the original motion.

The records obtained from [the Corporation's] garbage may, however, satisfy this "new evidence" test and actually support the Government's motion. That conclusion is hesitant because, while some (but not all) of the records are dated as if made subsequent to *[Corporation] Grand Jury I*, the Government is, in all other respects, silent as to the date these records were actually discovered. Moreover, the Government does not suggest it was unable to utilize this investigative technique earlier, although it is obvious that a record which came into existence after *[Corporation] Grand Jury I* could hardly have been discovered any earlier. Not only does the Government fail to provide historical information about the documents, but it also offers a confusing array of denominations for the information, creating confusion as to the actual source of the records. In a short statement attached to the documents the Government calls the mish-mash of telephone notes and other short records contained in Exhibit C, "[p]hotocopy [sic] of documents obtained pursuant to grand jury subpoena;" the cover sheet preceding these records, however, entitles these records "[p]hotocopies of corporation's patient files found in the trash." A similar reference to these as documents procured from [the Corporation's] garbage is found in the Government's brief in support of its motion to reconsider. The source of Exhibit D, a photocopy of patient intake sheet from the [Corporation's] clinic, is a complete mystery but presumably it was handed over by [the Corporation] in response to the grand jury's subpoena. This is all surmise, however, because the Government simply offers all these documents and suggests the court review them in deciding whether to modify the previous order with little explanation as to the source of the material or its date of discovery. Admittedly, it is a little difficult to conclude with absolute certainty, based on the information provided by the Government, that the Government knew or could have discovered all this evidence during the pendency of *[Corporation] Grand Jury I*. Fortunately, however, even giving the Government every benefit of the doubt, consonant with the broad discretion conferred on the grand jury, *United States v. Williams*, —— U.S. ——, ——, 112 S.Ct. 1735, 1742, 118 L.Ed.2d 352 (1992), these materials fail to give the slightest

pause in concluding *[Corporation] Grand Jury I* was correctly decided.

Included within the packet of records are notes made by one or more psychotherapists of counseling sessions with patients. A review of the content of these notes ironically completely confirms the conclusion reached in the prior ruling that the records sought by the Government include communications of a personal and confidential nature between patients and their therapist made for the purpose of counseling. For instance, one document (which will be discussed in some detail later) reflects a patient confiding in the therapist about the effects of a pending divorce on the patient's mental state, making reference to a goal of alleviating stress and agitation. Another record for a different patient, discusses the patients tendency to "soil" himself/herself in school and the embarrassment such conduct causes. These types of frank disclosure, necessary to successful psychiatric counseling, are only encouraged if guaranteed to be confidential by the psychotherapist-patient privilege. Instead of supporting the Government's position, presentation of this evidence solidifies the propriety of extending the privilege in *[Corporation] Grand Jury I*. The remainder of Exhibit C, consisting mostly of prescription forms, telephone messages and patient bills, are most likely not protected by the privilege and therefore subject to the grand jury's subpoena in the first place; their relevance to the Government's motion to reconsider the court's prior decision regarding the psychotherapist-patient privilege is unknown.

 But an even more basic reason exists to reject the Government's argument and its proffered new evidence as a basis for altering the prior decision. Syllogistically the Government's theory of proof of criminal conduct, at least with respect to the evidence protected by the psychotherapist-patient privilege, goes something like this: (1) A direct correlation exists between the length of a physician's notes documenting a visit with a patient and the actual length of the visit; (2) [the psychotherapist under investigation] took short notes when he represented lengthy patient visits to medicare; (3) therefore [the psychotherapist] misrepresented

the length of his patient visits to medicare. The sought evidence must be necessary to confirm the minor premise (2); unfortunately, even if the minor premise is proved true, the conclusion is doubtful because of the suspect reasoning contained in the major premise. To conclude few notes are indicative of short meetings, and long notes represent long meetings, has neither empirical or common sense support. Its at least as likely a long meeting can be summarized in a single sentence (especially if the meeting is inefficient) as a short meeting can be recounted by pages of detailed observations. Moreover, different individuals might employ vastly different styles of note-taking—some prefer nearly verbatim transcripts while others rely on their memory. Anyone who has attended college or law school remembers the students who left an hour-long lecture with nary a single note while others emerged with pages of notations. These hypothetical examples aptly demonstrate the absence of a relationship between the length of written notes and the length of a meeting or conversation—and the questionable validity of the Government's major premise. Moreover, and stepping away from the abstract, the counseling notes from the session with the patient facing a divorce which were referred to above, and which are contained in Government's Exhibit C, confirm this conclusion. These notes, consisting of one paragraph containing some 15 lines of text, are simply written too generally and broadly to support any meaningful inference regarding the actual amount of time spent with the patient. Specifically, this entry appears as follows, redacted and modified to preserve the confidentiality of the patient:

Patient: [name] Date: [date]

Therapy: Individual Psychotherapy

Therapist: [psychotherapist]

The patient is reporting that [he/she] is hoping [his/her] [spouse] will go ahead and finalize the divorce. The patient states that [he/she] is "letting [him/her] have everything" but [he/she] feels that this is indicated preserve [his/her] "peace of mind". [He/she] feels she will be under less stress and less agitated once the divorce is finalized. [He/she] is looking for joint custody of [his/her] children. The

patient does continue [Drug X] 1 mg TID and [Drug Y] 50 mg 3 at hs. [He/she] was given a 2 week prescription for each medication with no refills. The generic may be substituted. [He/she] also was prescribed [Drug Z] 5 mg 1 q 4 hours prn for nausea #30 with no refills. Again, the generic may be substituted. Benefits, side effects and precautions to observe with [his/her] medication regimen were again reviewed with the patient. We discussed the need for the patient to focus on future plans and goals and developments of "a new start" for [himself/herself]. Another appointment is scheduled.

Did the underlying meeting, in which the doctor observed "[b]enefits, side effects and precautions to observe with medication regimen were again reviewed with the patient," take five minutes, fifteen minutes, or an hour? No one besides those present at the counseling session can know with any degree of certitude the amount of time necessary to discuss this topic.[6] The expression of "feeling" and the discussion of the "need to focus on future plans" could have been accomplished in short phrases or elaborate conversation. The notes are no barometer of the length of such activities. Although the Government's burden of proof is only probable cause at the grand jury stage, the length of the notes in question does not make the duration of the appointments more or less probable. Besides, there are other sources of information probative of the length of the visits available to the Government. Certainly the Government is not required to show no other source for the information is available for its subpoena to prevail. However, the strong inference remains that the Government seeks to peruse the contents of the notes of the visit, rather than just their reflection on the length of the visit. This information is exactly what the psychotherapist-patient privilege protects. Thus, even assuming the records in Exhibit C qualify as "new evidence" to trigger reconsideration of the prior order, rather than supporting the Government's motion they defend the court's decision in *[Corporation] Grand Jury I.*

Last, the photocopies of patient intake sheets contained in Exhibit D, assuming again they qualify as "new evidence" as that term is employed, are wholly irrelevant to the applicability of the psychotherapist-patient privilege. Only documents reflecting the content of confidential psychotherapist-patient communications are protected by the privilege. Intake sheets merely list the name of the patient, the treating psychotherapist, and the amount the patient was charged for the treatment, not the least bit of which is privileged information. Presumably the Government expects the court to look at the sheet, notice the amount charged each patient, and conclude that the only way to establish overbilling occurred is to allow the Government to procure notes of counseling sessions to compare their length against the amount the patient was charged. Having already determined the poverty of the Government's presumed logical relationship between the length of notes and the amount of time spent with a patient, not much more need be said to discount Exhibit D. The materials contained therein add nothing to the Government's argument for alteration of the decision in *[Corporation] Grand Jury I.* Critically important, in evaluating the relief requested by the Government, is the fact that the Government must, and does, bear the burden of satisfying the preconditions to reconsideration, and, if those conditions are met, persuading the court that the earlier decision was clearly wrong. In that task it has failed and so must its motion for reconsideration. For this and the other reasons discussed above, the Government's Motion to Reconsider is **DENIED** and the original or-

---

**6.** Another possible source of this evidence could be a person stationed outside the session, such as an employee, who could observe the time the therapist and patient spent behind closed doors. But, as these examples indicate, only observation of the session, in one form or another, or the testimony of a participant in the session could confirm the amount of time. Of course, the Government may, for one reason or another, have reservations about interviewing patients about the length of their sessions; but that course of investigation remains available. While such patient interviews may be somewhat intrusive, questioning a patient about the length of particular session is generally far less intrusive than ordering disclosure of confidential communications between therapist and patient.

der of this court in *[Corporation] Grand Jury I* remains undisturbed.