Jeffrey McCONOCHA, et al., Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD
MUTUAL OF OHIO, Defendant.

No. 3:93CV7534.

United States District Court,
N.D. Ohio,
Western Division.

June 14, 1996.

Steven D. Bell, Ulmer & Berne, Cleveland, OH, Dennis E. Murray, Sr., Kirk J. Delli Bovi, Murray & Murray, Sandusky, OH, for Joseph F. Kreidler.

Marvin L. Karp, Ulmer & Berne, Cleveland, OH, for Jeffrey McConocha, Lawrence C. Engel, Isdn Technologies, Inc., Mathews Ford Sandusky, Inc.

Paul S. Lefkowitz, Cornelius J. O'Sullivan, Jr., Daina B. VanDervort, Climaco, Climaco, Seminatore, Lefkowitz & Garofoli, Cleveland, OH, David M. Schnorf, Schnorf, Schnorf & Ballard, Toledo, OH, Fritz Byers, Toledo, OH, Troy L. Moore, Scott, Ballinger & Moore, Toledo, OH, for Blue Cross & Blue Shield of Ohio.

## ORDER

CARR, District Judge.

This is a case under the Employee Retirement Income Security Act of 1974, as amended (ERISA). In a previous decision, *McConocha v. Blue Cross and Blue Shield*, 898 F.Supp. 545 (N.D.Ohio 1995), I entered summary judgment for the plaintiffs. The gravamen of that decision was that the defendant had, and had breached, an obligation to the plaintiffs to inform them about a material

fact: namely, that, whereas the plaintiffs paid twenty percent of the amount billed by a hospital for its services, the defendant Blue Cross and Blue Shield of Ohio (BCBSO) paid less than eighty percent of that amount.

More than seven months after that decision was entered, BCBSO filed a motion for reconsideration (Doc. 162). For the reasons that follow, that motion shall be overruled.

■ Although "motions to reconsider are not ill-founded step-children of the federal court's procedural arsenal," they are "extraordinary in nature and, because they run contrary to notions of finality and repose, should be discouraged." *In re August, 1993 Regular Grand Jury*, 854 F.Supp. 1403, 1406 (S.D.Ind.1994). To be sure, "a court can always take a second look" at a prior decision; but "it need not and should not do so in the vast majority of instances," especially where such motions "merely restyle or rehash the initial issues." *Id.* at 1407. It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or "to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue." *Id.* at 1408. Where, as is the case with much of the instant motion, "defendant views the law in a light contrary to that of this Court," its "proper recourse" is not by way of a motion for reconsideration "but appeal to the Sixth Circuit." *Dana Corp. v. United States*, 764 F.Supp. 482, 489 (N.D.Ohio 1991).

### 1. Timeliness

■ As an initial matter, I am confident that the motion for reconsideration should be overruled on the basis of simple untimeliness. "Motions for reconsideration of a judgment are construed as motions to alter or amend the judgment" under Rule 59(e). *Moody v. Pepsi–Cola Metropolitan Bottling Co.*, 915 F.2d 201, 206 (6th Cir.1990). Consequently, such motions must be filed within ten days after the judgment. Fed.R.Civ.P. 59(e); *Parker v. Board of Public Utilities of Kansas City*, 77 F.3d 1289, 1290 (10th Cir.1996) (motion for reconsideration filed thirteen days after grant of summary judgment was untimely). In any event, even if Rule 59(e) were not applicable. here, I conclude that a motion to reconsider must be submitted in a reasonably timely manner. An unexplained delay of more than seven months does not, in my view, meet that requirement. The defendant's motion is, accordingly, overruled because it was filed after a long and unexplained delay.

In any event, I conclude that, if the motion were properly before me, it is without merit.

### 2. Factual Disputes

■ BCBSO first attacks some of the factual determinations and inferences in my Order. In doing so, BCBSO relies on evidence about when the plaintiffs learned of BCBSO's discounting scheme. There has been no showing, however, of why that evidence was not presented to me before I reached my original decision. Because a motion to reconsider should not be used to proffer new evidence to support a prior argument when it could have been offered initially, this new evidence should be disregarded. When it is, the motion can be, and hereby is, overruled.

Nonetheless, I conclude that, even on consideration of that evidence, no cause has been shown to change the result that I originally reached.

■ Turning first to undisputed facts: it is clear that none of the pertinent documents clearly and expressly tells the plaintiffs that their portion of the total amount of cash received by the hospital may be greater than the twenty percent specified as their copayment. As a result, they were unaware when the insurance was purchased, and until sometime after they were presented with their bills, that the BCBSO cash contribution would be less than eighty percent.

■ For purposes of adjudicating the pending motion for reconsideration, I am willing to conclude that, sometime after receiving the Marymount bill, the plaintiffs became aware that BCBSO would be contributing less than eighty percent in cash to satisfy that remaining percentage. That fact, even if deemed undisputed, does not matter.

BCBSO owed the duty of disclosure, in my view, from the outset. It could not rely on the vagaries of either its advertisements, random statements by hospital personnel, or general word-of-mouth to communicate basic information about its discount scheme. A beneficiary of an insurance contract is entitled to notice of all material facts at the time of the contract's formation. *See Blon v. Bank One, Akron, N.A.,* 35 Ohio St.3d 98, 101, 519 N.E.2d 363, 367–68 (1988) (although there is no duty in ordinary business transactions to disclose material facts, there is a duty to speak when there is a fiduciary relationship between the parties or a special trust or confidence has been reposed in the other party); Restatement (Second) of Contracts §§ 161(d), 164 (1979) (nondisclosure of a material fact makes a contract voidable when the other person is entitled to know the fact because of a relation of trust and confidence between the parties).

In sum, I find that none of the methods by which the discount scheme may have become known to members of the public, including some BCBSO beneficiaries, constitutes in *form or substance the notice that should and could have been given directly,* and from the outset, in the pertinent plan documents. I reconfirm, therefore, my earlier determination that BCBSO operated a discount scheme that was, with regard to its obligations under ERISA, undisclosed to the beneficiaries of its hospitalization policies.

BCBSO complains about the statement, in my original decision, that "[i]n most instances, . . ., an employer pays most or all of the premium, [so that] the individual employee benefits not at all, or only to a very modest extent, from any premium reduction" that may result from the operation of the discount program. 898 F.Supp. at 547.[1] There was no evidentiary basis, according to BCBSO, for that statement.

On further consideration in light of the pending motion, I will agree that there may have been no basis for me to state that in "most instances" the employer pays the premium, and thus is the only beneficiary of a premium reduction. On the other hand, I have no doubt that it is accurate to state that in those instances in which the employer pays the premium, it alone benefits from any reduction in that cost. And that, most simply put, is the point that I was making— namely, that where the employer, rather than the individual, pays the premium, the individual derives no direct benefit from any reduction in that expense.

BCBSO also complains at length about the inference that I drew that its competitive position is enhanced by its ability to offer its insurance at a reduced premium. As it points out, comparative premium costs may not be the only determinative factor when a customer chooses one program over another. But that is not to say (and I trust that BCBSO is not trying to say) that cost is immaterial. To the extent, therefore, that premium cost plays a role in any customer's decision to purchase insurance from a particular provider, the ability of BCBSO (again, by its own admission) to reduce that cost through its discount program will result in an enhancement of its position in the marketplace.

BCBSO is disturbed that I draw that inference: I find nothing improper in drawing inferences that conform to common sense and derive from the statement, which BCBSO rather vigorously asserted in its summary judgment papers, that the discount program results in lower premiums. When it does so, those reduced premiums will make its product more attractive to the cost-conscious customer. Though that customer may also be concerned about other factors, such concerns are hardly likely to eliminate cost as an important consideration.

### 3. Legal Disputes

BCBSO also attacks how I used these facts and inferences in my analysis. In particular, BCBSO argues that my response to the perceived ambiguities in the pertinent provisions was improper. It first claims that I should have considered extrinsic evidence before applying the doctrine of contra proferentum and, second, that I inappropriately considered the reasonable expectations of the parties in my original decision. I disagree.

---

1. I note that BCBSO has claimed that its discount scheme results in lower premiums.

These doctrines of contra proferentum and reasonable expectations apply to the interpretation of the provisions at issue, and I applied them properly.

■ In any event, I conclude that the extrinsic evidence to which BCBSO points (namely, the additional deposition testimony of the plaintiffs) is not relevant, and thus does not bar the application of the doctrine of contra proferentum. That evidence merely shows, at most, that at some point after receiving and being billed for hospital treatment, the plaintiffs became aware of the discount scheme. Such post-hoc awareness is not a substitute for notice at the outset, and cannot be used to resolve the ambiguity in the underlying documents. Instead, ambiguity may be resolved through extrinsic evidence only if the extrinsic evidence relates to the formation of the contract. As stated in the Restatement (Second) of Contracts § 202 Comment b (1981), a court, when interpreting a contract, "seeks to put itself in the position [the parties] occupied *at the time the contract was made* " [emphasis supplied]. *Accord* John Murray, Murray on Contracts § 87 at 412 (3d ed. 1990) ("courts must attempt to determine the meaning attached by the parties *at the time of formation* "). [emphasis supplied].

When the insurance policy was obtained, the plaintiffs were unaware of the discount scheme. They cannot, accordingly, be deemed to have intended that such a scheme would be a part of their contract with BCBSO.

■ Finally, BCBSO claims that I erred when I read the term "pay" to mean "pay money" to the hospital rather than to "discharge" its debt to the hospital in part with cash and in part with intangible benefits. Admittedly, in reaching that conclusion, I looked to the pertinent documents, rather than to dictionaries or caselaw. My decision, however, was correct.

The Schedule of Benefits, as set forth in the Subscriber Certificate, states: "we [BCBSO] *pay* . . . 80% of the Provider's Reasonable Charge." (Doc. 81, Exh. 8, at 2). That document also provides that "you [i.e., the plaintiffs] must *pay* a certain dollar amount of Covered Services," and "[t]he portion you *pay* is your Co–Payment." (Doc. 81, Exh. at 24) [emphasis supplied].

There is no indication in that document that to "pay" is to have one meaning for the beneficiaries and another meaning for BCBSO. Plaintiffs had no reason to know that BCBSO would unilaterally interpret the term to "pay" to mean to discharge a debt with something other than money. Absent such awareness on the part of the plaintiffs, the word "pay" has to have the same meaning for both parties—namely, to pay dollars—nothing else, and nothing less. *See* Restatement (Second) of Contracts § 201 (1981) (X is not bound by a meaning that Y attached to a term when the contract was made when Y knew or had reason to know of the different meaning X attached to the term *and* X did not know or had no reason to know of the different meaning attached by Y).

### Conclusion

BCBSO's motion for reconsideration is overruled on procedural and substantive grounds. It was filed too late, and without any perceptible, much less expressed, reason for the delay. In any event, BCBSO's challenges to my discussion of factual matters and legal issues have no merit whatsoever.

It is, therefore,

ORDERED THAT defendant's motion for reconsideration be, and the same hereby is, denied.

So ordered.