**Atif SEDRAK, Plaintiff,**

v.

**John J. CALLAHAN, Acting Commissioner of Social Security, Defendant.**

No. 97 C 0175.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 5, 1997.

Order Denying Amendment Feb. 12, 1998.

---

Daniel E. May, Asst. U.S. Atty., Chicago, IL, for Plaintiff.

Frederick J. Daley, Chicago, IL, for Defendant.

### MEMORANDUM ORDER *of Magistrate Judge Edward A. Bobrick*

BOBRICK, United States Magistrate Judge.

Plaintiff Atif Sedrak brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act ("Act").

### I. BACKGROUND

Plaintiff filed his application for SSI on June 16, 1993, alleging that he was disabled since May 1, 1991, due to asthma and a heart condition. (Administrative Record ("R.") at 36–37). His application was denied at the initial levels of administrative review (R. 49, 52–54), and he requested an administrative hearing. On February 3, 1995, an Administrative Law Judge ("ALJ") conducted a hearing at which plaintiff, represented by counsel, appeared and testified through an interpreter. (R. 203). A vocational expert, Myra Klein, also testified. (R. 203). On April 27, 1995, after considering all the evidence presented, the ALJ found that plaintiff was not

disabled and, therefore, was not entitled to SSI under the Act. (R. 27–32). This became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review of the decision on June 12, 1996. (R. 5–6).

## A. *Evidence of Record*

Plaintiff was born on January 1, 1934, making him sixty-one years old at the time of the ALJ's decision in this case. (R. 36). Plaintiff came to the United States from Egypt in 1981. In Egypt, he completed high school and two years of college, and worked as an accounting clerk. (R. 206, 211, 230). Since coming to the United States, plaintiff has worked as a store clerk, mail sorter, and janitor. (R. 208–11). As a mail sorter, plaintiff walked and stood five hours a day, had to carry 10 pounds, and lift up to 20 pounds. (R. 61).

The medical evidence indicates that plaintiff has a history of tachycardia, or rapid heartbeat, and asthma. Plaintiff's treating physician, Dr. Guy Rowley, prescribed an inhaler for plaintiff in May of 1989. (R. 58, 100). After shoveling snow in February, 1993, plaintiff went to the hospital complaining of chest pain. (R. 102). His heart rate was rapid at 128 beats per minute. (R. 102). Dr. Rowley diagnosed paroxysmal supraventricular tachycardia, along with unstable angina, chronic airway obstruction, and elevated cholesterol level. (R. 103).

On July 12, 1993, plaintiff underwent a pulmonary function study. Before administration of bronchodilators, he registered an FVC of 2.46 of 4.20 predicted, FEV1 of 1.82 of 3.01, FEF25–75 of 1.33 of 3.00, PEFR of 3.33 of 7.93, and MVV of 49 of 120. (R. 105). After bronchodilators, he registered his FVC was 2.60, FEV1 was 1.87, FEF25–75 was 1.25, PEFR was 4.28, and MVV was 53.8.[1] (R. 1050).

On July 14, 1993, Dr. Mila Bacalla examined plaintiff at the Social Security Administration's request. (R. 112–116). Plaintiff did not exhibit acute respiratory distress; breath sounds were diminished but no rales or

wheezing were noted. (R. 115). Dr. Bacalla referred to the above-cited pulmonary function study, but did not comment on it. (R. 115). Dr. Bacalla felt that plaintiff's description of his chest pain was not quite typical of angina pectoris. (R. 115). A treadmill test showed no significant changes after seven minutes. (R. 115). Plaintiff exhibited mild systolic hypertension, but no evidence of retinopathy, congestive heart failure, or arrhythmia. (R. 115). He had a full range of motion in his cervical and lumbosacral spine, and exhibited no tenderness or spasm. (R. 114).

Plaintiff was hospitalized on August 7, 1993, with complaints of chest pains. (R. 118). A Holter monitor ruled out the possibility of myocardial infarction, and plaintiff's condition stabilized on medication. (R. 123–24). Staff thought he had probably been non-compliant with his treatment and that this had brought on his pain. (R. 125). Chest x-rays showed no active pulmonary infiltrate. (R. 132).

In September, 1993, plaintiff saw Dr. Rowley and complained of back pain. (R. 156). He claimed to have had a problem with his back since his 40s. (R. 156). Straight leg raising, and reflexes were normal—there was no radiation of pain. (R. 156). Dr. Rowley recommended that plaintiff bend from the knees rather than the waist, and started him on ibuprofen. (R. 157). Plaintiff returned in October, and stated that he occasionally used darvocet for his back pain. (R. 157). He also stated that he was "okay" if he avoided bending. (R. 157). Dr. Rowley also noted that plaintiff had quit work for reason unrelated to his physical problems. (R. 157).

In November of 1993, Dr. Rowley stated that he felt plaintiff could sit for fours a day, stand for two, and walk for one. (R. 153). He felt plaintiff could lift ten pounds frequently and twenty pounds occasionally, and carry five pounds frequently and carry 20 pounds occasionally. (R. 153). He added that plaintiff was unable to bend, squat, climb, or

---

1. FVC is forced vital capacity, FEV1 is forced expiratory volume for one second, FEF is forced expiratory flow, PEFR is peck expiratory flow rate, and MVV is maximum voluntary ventilation. 20 C .F.R. Pt. 404, Subpt. P, App. 1,

§ 3.00(E). For plaintiff's chronic obstructive pulmonary disease to be considered disabling under the Commissioner's listing, his FEV1 would have to be 1.35 or less. § 3.02.

crawl, and could reach only occasionally. (R. 154). Finally, Dr. Rowley stated that plaintiff was moderately restricted from unprotected heights, driving, and exposure to dust or fumes, and was mildly restricted from being around moving machinery and marked changes in temperature and humidity. (R.154). This was based on plaintiff's major problems of back strain and shortness of breath. (R. 154).

In October of 1994, plaintiff saw Dr. Charles Mercier for pain in his feet. (R. 202). Dr. Mercier diagnosed bilateral heel spurs and recommended hydrocortisone shots. (R. 200, 202). Plaintiff first refused the shots, preferring oral medication, then took the shots in January of 1995. (R. 200, 202). According to Dr. Mercier, "[i]f plaintiff had a job, he could work." (R. 200). In addition, two agency physicians reviewed plaintiff's medical files; Dr. William Curtis in July, 1993 (R. 161–68), and Dr. George Kudirka in December, 1993. (R. 169–76). Both felt plaintiff could lift up to 50 pounds and stand or walk up to 6 hours a day, but that he should avoid fumes, dust, and gasses. (R. 162, 165, 170, 173).

At his administrative hearing, plaintiff testified that his main problem was his asthma. (R. 212). He also stated he had pain in his lower back and could not bend for too long. (R. 213). Plaintiff said he could walk a block before he became short of breath. (R. 217). He also claimed he became short of breath after sitting or standing for an hour. (R. 217). He stated he could lift a gallon of milk, wash dishes, and make the bed. (R. 218). According to plaintiff, he quit his job as a janitor because his hours were being reduced. (R. 209). He testified that he quit his job as a mail clerk or sorter because he could not lift the heavy trays of mail. (R. 210). The vocational expert testified that plaintiff's job as a mail sorter was unskilled light work, requiring him to lift ten to fifteen pounds. (R. 229). The Commissioner's regulations define light work as involving:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

## B. ALJ's Decision

After considering all the evidence of record, the ALJ determined that the plaintiff suffered from tachycardia, asthma, low back pain, and bilateral heel spurs. (R. 31). He found that none of these impairments, or their combination, met or equalled an impairment listed as disabling in the Commissioner's regulations. (R. 31). The ALJ further found that plaintiff retained the capacity for work-related activities "except for work involving lifting more than 10 pounds or which involves exposure to concentrated levels of pulmonary irritants or unprotected heights." (R. 31). He found that plaintiff's past work as a mail sorter did not exceed these limitations. (R. 31). Accordingly, he then determined that plaintiff retained the capacity to perform his past work and, therefore, that he was not disabled under the Act. (R. 22). This stands as the Commissioner's decision and is presently before this court for review. 42 U.S.C. § 405(g).

## II. ANALYSIS

The applicable standard of review of the Commissioner's decision is a familiar one. The Social Security Regulations provide a five-step inquiry to determine whether a plaintiff is disabled:

1) whether the plaintiff is currently employed;

2) whether the plaintiff has a severe impairment;

3) whether the plaintiff has an impairment that meets or equal one of the impairments listed as disabling in the Commissioner's regulations;

4) whether the plaintiff can perform his past relevant work; and

5) whether the plaintiff is capable of performing work in the national economy.

20 C.F.R. §§ 404.1520; 416.920; *Knight v. Chater,* 55 F.3d 309, 313 (7th Cir.1995). The burden of proof is the plaintiff's *through step four;* if it is met, the *burden shifts to the*

Commissioner at step five. *Id.* In this case, the ALJ determined, at step four, that plaintiff was capable of performing his past work as a mail sorter.

The court must affirm this decision if it is supported by substantial evidence. 42 U.S.C. §§ 405(g); 1382(c)(3). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.1997), *citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The court may not reweigh the evidence, or substitute its judgment for that of the Social Security Administration. *Binion*, 108 F.3d at 782. Where conflicting evidence would allow reasonable minds to differ as to whether the plaintiff is disabled, the Commissioner has the responsibility for resolving those conflicts. *Id.* Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Id.* Here, the plaintiff argues that the ALJ erred as to his finding regarding plaintiff's past work, failed to give appropriate weight to the opinion of plaintiff's treating physician, and erred in finding plaintiff's complaints not fully credible.

### A. Past Relevant Work

The plaintiff submits that the ALJ erred in finding plaintiff's past work did not expose him to pulmonary irritants. Although plaintiff submitted a brief to the Appeals Council in which he pointed out various flaws in the ALJ's decision, he did not raise this question. (R. 10–18). The failure to raise this assertion administratively constitutes a waiver of the issue and we need not consider it. *Brewer v, Chater*, 103 F.3d 1384, 1393 (7th Cir. 1997). Even if the issue had not been waived, however, it would not provide grounds for reversal.

■ At step four, it is the plaintiff's burden to prove he is unable to perform his past work. *Id.* He must show that he does not have the residual functional capacity to perform the demands of the past job either as he actually performed it or as it is generally performed in the national economy. *Id.* Here, plaintiff has not presented any evidence regarding exposure to pulmonary irritants in his past work.

### B. Physicians' Opinions

■ Plaintiff next argues that the ALJ should have credited the opinion of plaintiff's treating physician that plaintiff was limited to, at most, sedentary work, as opposed to accepting the opinions of two reviewing physicians. Where there is a conflict between medical opinions, it is for the ALJ to decide which doctor to believe. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir.1996). The ALJ must give substantial weight to medical evidence and opinions submitted unless specific, legitimate reasons constituting good cause are shown for rejecting it. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995). A medical opinion may be discounted if it is internally inconsistent or inconsistent with other evidence. *Books*, 91 F.3d at 979. The opinion of a treating physician must be accorded great weight only if it is supported by clinical or diagnostic data. *Id.* Here, the ALJ chose not to fully accept Dr. Rowley's assessment of plaintiff's limitations, but he did not fully credit the reviewing physician's opinions either. When viewed against the record as a whole substantial evidence supports the ALJ's treatment of these medical opinions.

■ There are several inconsistencies in Dr. Rowley's assessment of plaintiff's capacity for work. One of plaintiff's major problems, according to Dr. Rowley, is back strain, from which the plaintiff has suffered for 20 years. (R. 154, 157). Yet, there was no evidence of it during plaintiff's consultative exam and plaintiff made no mention of it. (R. 114–15). Dr. Rowley, in September of 1993, recommended that plaintiff not bend from the waist, but only from the knees. (R. 157). Yet, in October of 1993, he states that plaintiff is completely unable to squat—or bend from the knees. (R. 154). Both Dr. Rowley and the plaintiff indicate that plaintiff is able to curb back pain by not bending (R. 157)—and plaintiff's past work *never* required bending. (R. 61). Furthermore, there has never been any mention of any restriction in plaintiff's ability to walk or stand.

This is not a case where we have a treating physician's clinical notes restricting a patient's work activities or recommending a patient decrease work activities. Dr. Rowley has treated plaintiff since at least 1989 (R. 58)—while plaintiff was still working—but never addresses his ability to work until plaintiff's attorney requests him. Actually, Dr. Rowley notes that plaintiff's physical condition was not the cause of him quitting work. The only restrictions Dr. Rowley ever placed on plaintiff were against bending from the waist (R. 157), lifting heavy objects, and climbing stairs. (R. 73).

So, the plaintiff's treating physician provided little support for his opinion and it contained certain inconsistencies. In the end, the ALJ simply exercised his province for resolving conflicts in the medical evidence. Although Drs. Curtis and Kudirka were reviewing physicians, the opinions of such physicians may constitute substantial evidence. *Moothart v. Bowen*, 934 F.2d 114, 115 (7th Cir.1991). Even so, the ALJ did not fully credit their opinions, which included findings that plaintiff could lift up to 50 pounds. Instead, he found their opinions that plaintiff could walk or stand up to six hours per day to be consistent with the medical evidence.

Plaintiff also argues that the ALJ should have given more consideration to plaintiff's heel spurs. The physician who treated plaintiff specifically for heel spurs, however, did not state any limitations or restrictions as a result of this condition. (R. 200–202). In fact, he felt that plaintiff could work. (R. 200). Given the record before the ALJ, we simply cannot find his treatment of the medical opinions in this case was not supported by substantial evidence.

### C. *Plaintiff's Complaints*

■ Finally, plaintiff argues that the ALJ erred in not finding his subjective complaints fully credible. We will not overturn an ALJ's credibility determination unless it is patently wrong. *Knight*, 55 F.3d at 315. There are several factors the ALJ must consider in assessing a plaintiff's credibility:

1) support of plaintiff's complaints by objective medical evidence;

2) plaintiff's daily activities;

3) precipitating or aggravating factors;

4) type, dosage, and effectiveness of medication;

5) treatment other than medication;

6) any measures used to alleviate pain;

7) functional limitations and restrictions.

20 C.F.R. § 416.929(c)(3); *Knight*, 55 F.3d at 314. We have already discussed the objective medical evidence in connection with the ALJ's treatment of medical opinions in this case. It is not of type that would suggest an individual was restricted to no more than sedentary activities. The remaining factors do not fully support or fully undermine plaintiff's claims.

■ The plaintiff testified that his daily activities were fairly limited, basically watching television and reading. The activities that aggravate his condition—heavy lifting, bending, and climbing stairs—were not a part of his former job. He takes prescription medications: for his heart, Verelan, which is apparently a high blood pressure medication. *Physicians' Desk Reference*, at 1411 (50th ed.1996); Ventolin aerosol and Theochron for his asthma; and Daypro for his heel spurs. (R. 191). His heart medication would appear to be effective. It is unclear how he uses his Ventolin inhaler; he did not resort to it during what he characterized as an asthma attack at his hearing. (R. 211).

There is no record of plaintiff seeking treatment other than medication for his impairments. At one time, he apparently taped his back to help him bend. (R. 213–14). As for functional restrictions, again, they are activities not required in his former work. There is evidence that plaintiff has an exaggerated view of these, as well. For example, he claims to be able to sit for no more than one hour at a time (R. 217); his treating physician said he could sit for four hours at a time.

In summary, the evidence pertaining to plaintiff's credibility is somewhat conflicting. The ALJ, in not fully crediting plaintiff's complaints, merely resolved those conflicts. Once again, it is his office to do so—not the court's. *Brewer*, 103 F.3d at 1390. We cannot find that his credibility determination is not supported by substantial evidence.

## III. CONCLUSION

For the foregoing reasons, it is hereby ordered that the Commissioner's motion for summary judgment is GRANTED, and that the plaintiff's motion for summary judgment is DENIED.

### MEMORANDUM ORDER

Before the court is the motion of plaintiff Atif Sedrak to alter this court's judgment of December 5, 1997.

Plaintiff originally sought review pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). Plaintiff filed a memorandum in support of his original motion as well as a memorandum in reply to the Commissioner's memorandum. The court reviewed these filings along with the administrative record and concluded that the Commissioner's decision was supported by substantial evidence. Plaintiff now charges that the court erred in reaching that conclusion, and asks us to overturn our decision under Fed.R.Civ.P. 59(e).

■ Rule 59(e) allows a party to direct the district court's attention to newly discovered evidence or a manifest error of law or fact, thereby enabling the court to correct its own errors before appellate review. *Moro v. Shell Oil Co.,* 91 F.3d 872, 876 (7th Cir.1996). A "manifest error" is not demonstrated by the disappointment of the losing party; it has been described as a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *In Re August, 1993 Regular Grand Jury,* 854 F.Supp. 1403, 1407 (S.D.Ind.1994). Plaintiff here points to nothing like that happening in this case. Instead, like many litigants, he has clearly abused Rule 59(e), which is not designed to allow for corrections to rough drafts of opinions. *Huff v. UARCO, Inc.,* 925 F.Supp. 550, 561 (N.D.Ill.1996)(and collected cases at n. 3).

■ Furthermore, the rule is not a vehicle for rehashing previously rejected arguments. *Caisse Nationale de Credit v. CBI Industries,* 90 F.3d 1264, 1270 (7th Cir.1996). Rehashing arguments, however, is all plaintiff does here. His motion essentially paraphrases the arguments he presented earlier, perhaps thinly veiled with a "the court erred . . ." or "the court misapprehended . . ." here and there. The misapprehension at work, however, is plaintiff's misapprehension of the standard of administrative review applicable to his claim. His arguments—then and now—all deal with the weight of, and conflicts in, the evidence of record. Such problems—if they even exist—do not mean that *substantial evidence* did not support the Commissioner's decision, however, and that is all the law requires. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997). "Substantial evidence" is only that much evidence as a reasonable mind would accept to support a conclusion. *Id.* It can be less than a preponderance of evidence. *Papendick v. Sullivan,* 969 F.2d 298, 301 (7th Cir.1992). The Commissioner's decision in plaintiff's case was supported by at least as much evidence when we initially reviewed it, and it continues to be now.[1]

Accordingly, for the foregoing reasons, the plaintiff's motion to alter or amend judgment is DENIED.

---

1. In addition, no matter how many times plaintiff requests us to do so, we cannot reweigh the evidence presented to the Commissioner. *Binion,* 108 F.3d at 782.

