FIRST NATIONAL BANK IN MANITOWOC, Plaintiff,

v.

The CINCINNATI INSURANCE COMPANY and Continental Casualty Company, Defendant.

No. 03–C–241.

United States District Court, E.D. Wisconsin.

March 2, 2004.

Order Denying Reconsideration May 12, 2004.

Charles P. Graupner, Michael Best & Friedrich LLP, Waukesha, WI, Nathaniel Cade, Jr., Timothy A. Burkard, Michael Best & Friedrich LLP, Milwaukee, WI, for Plaintiff.

Joseph J. Ferris, Kasdorf Lewis & Swietlik, Green Bay, WI, Nancy K. Tordai, Victor C. Peters, Hanson Peters Nye, Barrington, IL, for Defendant Cincinatti Ins. Co.

James A. Knox, Jr., Alan P. Jacobus, Tressler, Soderstrom, Matoney & Priess, for Defendant Continental Cas. Co.

## DECISION AND ORDER

GRIESBACH, District Judge.

Plaintiff First National Bank In Manitowoc ("FNB") claims that Continental Casualty Company ("Continental") and Cincinnati Insurance Company ("Cincinnati") are liable under their respective bonds for losses sustained by FNB as a result of a fraud committed by one of its customers. FNB has asserted claims for declaratory relief and breach of contract against each defendant and, in addition, alleges that Continental's denial of coverage constitutes bad faith. The case is presently before me on Continental's motion for summary judgment. For the reasons that follow, Continental's motion will be granted.

### FACTS

Continental issued its Community Financial Institutions Bond to FNB on September 22, 1999. By letter dated September 24, 2001, Thomas J. Bare, FNB's president, advised Wayne Sather of LMT–Maritime, Inc., the insurance agency through which FNB had purchased the bond, that FNB wished to cancel the bond effective October 1, 2001. LMT–Maritime forwarded the letter to Continental, which then processed the request, determined the unearned premium to be $6,790.87 and sent a check to FNB for that amount. In the meantime, FNB obtained a new bond issued by Cincinnati that became effective October 1, 2001.

On October 22, 2001, FNB learned that Lee Kust, the principal of Westown Auto, Inc., one of its commercial customers, had disappeared. FNB conducted a review of Westown's outstanding line of credit and loans, and discovered that Kust and Westown had fraudulently misrepresented on more than one hundred occasions either the value or existence of a vehicle that served as security for Westown's floor plan line of credit. Ultimately, FNB computed its loss at over $1.8 million.

On or about November 8, 2001, FNB gave Continental notice of its loss and requested reimbursement under the bond it had just cancelled. Continental denied coverage, noting that its bond only covered losses discovered while it was in effect. FNB thereupon commenced this action in state court. Continental removed the case to federal court based on the diverse citi-

zenship of the parties. My jurisdiction arises under 28 U.S.C. § 1332.

## ANALYSIS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323, 106 S.Ct. 2548. Once this burden is met, the non-moving party must designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. *Id.* at 322–24, 106 S.Ct. 2548.

In this case, Continental denies liability on the ground that the loss was discovered by FNB after its bond was cancelled. The pertinent language of the bond reads:

> In consideration of the payment of the premium, subject to the Declarations made a part hereof and subject to all of the other terms and conditions of this bond, the Company agrees to indemnify the Insured against any loss covered by this bond which is sustained by the Insured at any time but discovered during the Bond Period as set forth in or endorsed to Item 2 of the Declarations, or its earlier cancellation or termination, if any.

(Timothy Markey Aff., Ex. A., pg. 1.) The bond also provides that it may be cancelled "by the Insured by mailing or delivering to the Company written notice stating when thereafter such cancellation shall be effective," and that "[t]ermination or cancellation of this bond terminates liability for any loss which is discovered after termination or the effective date of cancellation,

except as provided in Condition 9," (*id.* at pg. 14) which condition is not applicable here. Continental contends that because FNB cancelled the bond effective October 1, 2001, and did not discover the loss until October 22, 2001, no coverage exists.

FNB does not dispute that Continental's contention that it is not liable for losses discovered after cancellation of its bond. Instead, FNB claims that Continental never effectively cancelled the bond. Although FNB acknowledges that it requested cancellation of the bond effective October 1, 2001, and does not dispute the fact that Continental refunded a prorated portion of the premium it paid, FNB argues that in order to cancel the bond, Continental was required to also give notice to the Commissioner of Banks or the Commissioner of Savings and Loan Associations for the State of Wisconsin. The language on which FNB relies is contained in an endorsement to the Bond and states:

> No cancellation or termination of this bond as provided in Part A. or Part B.(4) above shall be effective unless the Company gives in advance at least ten (10) days written notice by registered mail to either the Commissioner of Banks of the State of Wisconsin or to the Commissioner of Savings and Loan Associations of the State of Wisconsin, whichever Commissioner regulates the Insured. If this bond is cancelled at the request of the Insured pursuant to Part A.(2) above, this provision nevertheless shall apply, it being the duty of the Company to give the required written notice to such Commissioner, such notice to be given promptly and in any event within ten (10) days after the receipt of such request. The foregoing notice requirements may be waived in writing by the Commissioner of Banks or the Commissioner of Savings and Loan Associa-

tions, whichever Commissioner regulates the Insured.

(Markey Aff., Ex. A., Endorsement 6.) Because it appears Continental failed to provide such notice, FNB argues that summary judgment should not be granted.

Endorsement 6 was apparently issued in an effort to comply with certain provisions of the Wisconsin statutes that regulate state banks and savings and loans. Section 224.06(1) requires a bond covering every person employed by a bank in a position requiring the receipt, custody or control of money or other personal property on the bank's behalf. The bond must be in an amount sufficient to protect the bank for loss by reason of acts of fraud or dishonesty on the part of such employees, § 224.06(3), and cannot be cancelled without written notice to the division of banking. Section 224.06(4) provides:

> Every such bond shall provide that no cancellation or other termination of the bond shall be effective unless the surety gives in advance at least 10 days written notice by registered mail to the division. If the bond is cancelled or terminated at the request of the insured (employer), the surety shall give the written notice to the division within 10 days after the receipt of such request.

Wis. Stat. § 215.11(4) contains a similar requirement as to savings and loan associations. The purpose of such provisions is to give assurance to the agency charged with regulating the business or activity involved that the protection mandated by the law is in effect. 2 *Couch On Insurance* 3d, § 31:18, at 31–27. Thus, when such notice is required, "no cancellation is effected when notice is not given to the proper agency designated by the statute requiring the giving of notice, at least as to third parties seeking to recover against the insured." *Id.* at 31–28.

Section 224.06(4) does not apply here, however, because FNB is not a state bank.

It is a national bank. The word "bank" as used in § 224.06 is defined by Wis. Stat. § 220.01(1) as follows:

> Unless the context requires otherwise, the term "bank" means any banking institution incorporated under the laws of this state.

FNB is not incorporated under the laws of Wisconsin, but is federally chartered pursuant to the National Bank Act, 12 U.S.C. § 21 *et seq.* As such, it is regulated by the Office of the Comptroller of the Currency ("OCC"), which has its own regulation mandating fidelity coverage for officers and employees of national banks. *See* 12 C.F.R. § 7.2013(a). *See also* 12 U.S.C. § 24 (Fifth), and *Lindsey v. Standard Accident Ins. Co.,* 173 So. 53, 233 Ala. 571 (1937) ("The requirement of bonds by officers of national banks is regulated by federal and not state statutes.").

██ Because § 224.06 does not apply to FNB, it follows that endorsement 6 of the bond issued by Continental has no application to this case. The endorsement, by its terms, requires notice to "the Commissioner of Banks of the State of Wisconsin or to the Commissioner of Savings and Loan Associations of the State of Wisconsin, *whichever Commissioner regulates the Insured.*" (Markey Aff. Ex. A, endorsement 6.) (emphasis added). Here, leaving aside the fact that no such officers as the Commissioners of Banks or Savings and Loan Associations exist any longer, their successor, the Department of Financial Institutions, does not regulate FNB with respect to fidelity coverage for its officers and employees. Since the Department does not regulate FNB with respect to such matters, Continental had no obligation to provide the Department notice of FNB's request to cancel its bond. Its failure to do so therefore had no impact on the cancellation of its bond.

Accordingly; and for the reasons set forth above, Continental's motion for summary judgment is granted.

**SO ORDERED.**

## ORDER

First National Bank in Manitowoc (FNB) has moved that I reconsider my decision granting summary judgment to Continental Insurance Company (Continental). FNB asserts that I made a mistake of fact when I held in my decision that the Wisconsin Department of Financial Institutions (DFI) does not regulate FNB and, thus, Continental had no obligation to provide DFI notice of FNB's request to cancel its bond in order for such cancellation to become effective. FNB contends that because certain unrelated state statutes impose certain obligations on all banks, including national banks, it follows that FNB is a bank regulated by the DFI and the notice of cancellation requirement set forth in Continental's policy applies. Continental's failure to provide such notice, FNB again argues, prevented the requested cancellation from becoming effective.

■ To prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact. *Oto v. Metropolitan Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir.2000). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Id.,* (quoting *Sedrak v. Callahan,* 987 F.Supp. 1063, 1069 (N.D.Ill.1997)). A Rule 59(e) motion is "not intended to routinely give litigants a second bite at the apple, but to afford an opportunity for relief in extraordinary circumstances." *Dale & Selby Superette & Deli v. United States Dept. of Agriculture,* 838 F.Supp. 1346, 1348 (D.Minn.1993).

I do not find such extraordinary circumstances in this case. In my decision granting summary judgment, I concluded that because DFI does not regulate national banks for insurance purposes, Continental's failure to provide DFI with notice of the cancellation of its policy did not prevent such cancellation from becoming effective. I reached this conclusion notwithstanding the fact that Continental's policy required that such notice be given "to either the Commissioner of Banks for the State of Wisconsin or to the Commissioner of Savings and Loan Associations of the State of Wisconsin, whichever Commissioner regulates the Insured." (Continental's PFOF ¶ 14.) FNB argues that because DFI, the successor to the Commissioner of Banks, may regulate national banks, such as FNB, for some purposes, the quoted policy language applies and Continental's failure to provide notice to DFI renders its intended cancellation ineffective.

FNB does not claim, however, that DFI would have been authorized to take any action even if it had received such notice. It does not claim, for example, that DFI was charged with the responsibility of insuring that the bank's account holders were adequately protected from losses resulting from the fraudulent activity of either bank employees or its customers. In other words, FNB seems to concede that notice to DFI would have served no purpose whatsoever, but because the policy language can be read to require such notice, it argues that Continental's cancellation of its bond was ineffective.

As stated in my original decision, I reject this interpretation of Continental's policy. I concluded that notice was not required since FNB was not regulated by DFI, at least for insurance purposes. The fact that other state statutes or regulations may apply to national banks does not

change the result. Even if the language clearly and unequivocally required notice, Continental's failure to supply such notice, where DFI had no authority to act on it, would not have prevented the cancellation of the bond. Continental's failure to perform what all concede would have been a useless act has no legal significance to its obligation under a contract. Such notice, under the undisputed facts before me, was an immaterial term of the agreement. I therefore conclude that FNB's motion for reconsideration should be denied.

So ordered.·