Nancy FISHER, Plaintiff,

v.

**WELLINGTON EXEMPTED VILLAGE SCHOOLS BOARD OF EDUCATION, et al., Defendants.**

No. 1:00CV2295.

United States District Court, N.D. Ohio, Eastern Division.

Nov. 19, 2001.

Order Denying Reconsideration
Jan. 24, 2002.

J.C. Ratliff, Marion, OH, for Nancy Fisher, plaintiff.

Amy Wirtz, Baumgartner & O'Toole, Amherst, OH, Dennis M. O'Toole, Baumgartner & O'Toole, Sheffield Village, OH, Michael J. Loughman, Baumgartner & O'Toole, Sheffield Village, OH, for Wellington Exempted Village Schools Board of Education, defendant.

## MEMORANDUM OPINION AND ORDER

LIMBERT, United States Magistrate Judge.

The instant case is before the Court on competing motions for summary judgment filed by Plaintiff Nancy Fisher and Defendants Wellington Exempted Village Schools Board of Education, Superintendent Sharon Buccieri, Board of Education President Patricia Sumpter, and Board Members Phyllis Mosher, Loreen Baker, Tim Butti and Ivan Santiago. *See* Electronic Case Filing (ECF) Dkt. ## 34, 35, 39, 46, 58.

## I. FACTUAL AND PROCEDURAL HISTORY

On September 11, 2000, Plaintiff Nancy Fisher (Plaintiff) filed a complaint against the Wellington Exempted Village Schools Board of Education, its President and four board members, and the Superintendent and Treasurer of the Wellington Exempted Village School District. *See* ECF Dkt. # 1. In her complaint, Plaintiff named all of the individual defendants in both their individual and official capacities. *See id.* On November 13, 2000, the parties consented to the jurisdiction of the undersigned. *See* ECF Dkt. # 17.

On July 2, 2001, Plaintiff voluntarily dismissed the Treasurer, both in his individual and official capacity, and dismissed the other individual defendants, but only in their individual capacities. *See* ECF Dkt. # 30. Thus, Plaintiff continues to press claims against the Wellington Exempted Village Schools Board of Education and its President and four board members, and the Superintendent of the school district, but only in their official capacities (hereinafter referred to Defendants). *See id.*

Plaintiff alleges that she was employed as a principal under a two-year contract and subsequently a three-year contract in the Wellington Exempted Village School District from September, 1995 until June 30, 2000, when her three-year contract expired. *See* ECF Dkt. # 1 at ¶ 15. Plaintiff avers that on March 14, 2000, she was advised by Defendants that her three-year contract as Principal of the Westwood Elementary School would be renewed. *See id.* at ¶ 16. On March 16, 2001, Plaintiff alleges that, during an administrative meeting with the Superintendent, she expressed her opinions regarding the inadequate actions taken by Defendants against a Wellington high school business teacher, Gerald Camp, Jr., who admitted to viewing pornographic Web sites on school comput-

ers. *See id.* at ¶ 17 *and,* ECF Dkt. # 49, exhibit G. Plaintiff maintains that Defendants told her and other administrators to support Mr. Camp at this administrative meeting. *See id.* On March 17, 2001, Plaintiff avers that the Superintendent called Plaintiff into an office and advised Plaintiff that Plaintiff would be issued a one-year probationary contract as Principal of Westwood Elementary School, instead of a three-year contract renewal as a principal. *See id.* at ¶ 18.

On March 21, 2000, at a Wellington Exempted Board of Education meeting, Plaintiff alleges she once again expressed her views regarding the inadequate actions taken by Defendants against Mr. Camp. *See* ECF Dkt. # 1 at ¶ 20. Plaintiff further avers that Defendants tabled her one-probationary contract, even though it was listed on the meeting's agenda, and Defendants never addressed her one-year probationary contract again. *See id.* On March 30, 2001, Plaintiff alleges Defendants issued her a two-year contract for a newly created position as a Grants Developer, District Gifted Liaison, and Elementary Intervention Coordinator. *See id.* at ¶ 21. A few months later, Plaintiff alleges she reported to work as Principal of Westwood Elementary School and Defendants instructed her that she was no longer principal of the school and they told her to leave the premises. *See id.* at ¶ 22. Plaintiff states that Defendants' reasoning for not renewing her contract as principal was her alleged poor performance as outlined in Plaintiff's evaluation on January 31, 2001. *See id.* at ¶ 23.

Plaintiff asserts six claims against Defendants in her complaint. *See* ECF Dkt. # 1. Plaintiff's central claim consists of a § 1983 First Amendment retaliation action alleging that Defendants did not renew Plaintiff's three-year contract as principal due to Plaintiff's conduct and expression of her opinions. *See id.* at ¶ 24. More specifically, Plaintiff asserts that Defendants retaliated against her for publicly criticizing them at an administrative meeting on March 16, 2000 and at a regularly scheduled Board of Education meeting on March 21, 2000. *See* ECF Dkt. # 46 at 1, 4. In her second and third claims, Plaintiff alleges that Defendants conspired to violate her First Amendment rights pursuant to 42 U.S.C. §§ 1985 and 1986. *See* ECF Dkt. # 1 at ¶¶ 29–40. In her fourth and fifth claims, respectively, Plaintiff asserts invasion of privacy and negligence on the part of Defendants. *See id.* at ¶¶ 41–48. Finally, in her sixth claim, Plaintiff alleges that Defendants violated Ohio Revised Code § 3319.02(C) because Defendants did not provide written notice to her of their intention not to re-employ her as principal on or before the last day of March of the year in which her contract expired. *See id.* at ¶¶ 49–51.

On July 31, 2001, Defendants moved for summary judgment on all of Plaintiff's claims. *See* ECF Dkt. # 35. On the same day, Plaintiff countered and moved for partial summary judgment on her claim alleging violation of the notice provisions contained in Ohio Revised Code § 3319.02(C). *See* ECF Dkt. # 34. Plaintiff and Defendant both filed opposition memoranda, and Defendant filed a reply brief. *See* ECF Dkt. ## 39, 46, 58.

## II. STANDARD OF REVIEW

The function of summary judgment is to dispose of claims without trial when one party is unable to demonstrate the existence of a factual dispute which, if present, would require resolution by a jury or other trier of fact. *See Schultz v. Newsweek, Inc.,* 668 F.2d 911, 918 (6th Cir.1982). Rule 56(c) of the Federal Rules of Civil Procedure governs summary judgment motions and provides, in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED.R.CIV.P. 56(c). Under Rule 56, a party is entitled to summary judgment *where the documentary evidence produced by the parties permits only one conclusion. See Allen v. Wood,* 970 F.Supp. 824, 828 (E.D.Wash.1997) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis added)).

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and must identify the portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED. R.CIV.P. 56(c)). This initial burden can be discharged by the moving party by showing that the nonmoving party has failed to establish an essential element of the nonmoving party's case for which he or she bears the ultimate burden of proof at trial. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Morales v. American Honda Motor Co., Inc.,* 71 F.3d 531, 535 (6th Cir.1995). The evidence submitted must be viewed in a light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *See Adickes v.*

*S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

If the moving party meets this burden, then the nonmoving party must take affirmative steps to avoid the entry of a summary judgment. *See* FED.R.CIV.P. 56(e). The nonmoving party must present additional evidence beyond the pleadings. *See id.* The nonmoving party must do this by presenting more than a scintilla of evidence in support of his or her position. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment must be granted unless sufficient evidence exists that favors the nonmoving party such that a judge or jury could reasonably return a verdict for that party. *See id.* at 249, 106 S.Ct. 2505. The Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* If a party fails to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then the Court is required to enter summary judgment. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## III. LAW AND ANALYSIS

Based upon Defendants' omnibus motion for summary judgment, this Court will sequentially apply the summary judgment standard to each of Plaintiff's six claims.[1]

### A. § 1983 First Amendment Retaliation Claim

Plaintiff's First Amendment retaliation cause of action represents her core claim against Defendants in the case *sub judice.*

---

1. Defendants raise the defense of sovereign immunity. *See* ECF Dkt. # 5 at 7 *and,* ECF Dkt. # 39 at 7–9. But they ignore Ohio Revised Code § 3313.17, which plainly states that, "The board of education of each school district shall be a body politic and corporate, and, as such, capable of suing and being sued." Thus, sovereign immunity does not shield Defendants from this suit.

*See* ECF Dkt. # 1. Plaintiff relies upon the following testimony in an attempt to establish a prima facie case of retaliation. On January 31, 2000, Plaintiff maintains that the Superintendent stated that she would recommend a three-year renewal of Plaintiff's contract as principal of Westwood Elementary School. *See* ECF Dkt. 46, exhibits B, C. On March 14, 2000, Plaintiff alleges that the Superintendent reaffirmed to Plaintiff her intention to recommend Plaintiff's three-year contract renewal. *See id., and* ECF Dkt. # 37 at 4, ¶ 16. Then, on March 16, 2000, during an administrative meeting, Plaintiff told those present that she would not support Mr. Camp, the teacher within the district who downloaded pornographic Web sites depicting teenage girls onto a school computer. *See* ECF Dkt. # 46, exhibit B at ¶ 6. Also at this meeting, Plaintiff criticized the Board of Education for its lenient disciplining of Mr. Camp. *See id.*[2]

On March 17, 2000, Plaintiff states that the Superintendent advised Plaintiff that she would only be recommending a one-year renewal of Plaintiff's contract as principal. *See* ECF Dkt. # 46, exhibit B at ¶ 7. On March 21, 2000, during a regularly scheduled Board of Education meeting, Plaintiff publicly criticized the Board's disciplinary response toward Mr. Camp and stated her belief that she was being offered a one-year principal's contract in retaliation for expressing her opinions to Defendants. *See* ECF Dkt. # 46, exhibit B at ¶ 8. Plaintiff also asserts that the one-year principal's contract offer was on the Board of Education's agenda for the March 21, 2000 meeting for discussion and a vote, but that the Superintendent pulled the issue from the agenda after Plaintiff spoke. *See id.* at ¶ 9. Plaintiff asserts that she never refused to accept the one-year

principal's contract. *See* ECF Dkt. # 46, exhibit B at ¶ 7. Plaintiff avers that after pulling the contract offer from the Board's agenda on March 21, 2000, the Superintendent later recommended that Plaintiff be extended a two-year contract as a Grants Developer. *See* ECF Dkt. # 46 at 4. Plaintiff served out the remainder of her then existing contract, which expired on June 30, 2000 and has not worked for Defendants since. *See* ECF Dkt. # 1 at ¶ 22.

█ Based upon these allegations, Plaintiff brings a First Amendment retaliation claim. "There are three elements necessary to establish a claim of retaliation under the First Amendment: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiffs constitutional rights." *Hoover v. Radabaugh*, 123 F.Supp.2d 412, 419 (S.D.Ohio 2000) (citing *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir.1998)).

### 1. Protected Activity

█ Before addressing whether Plaintiff engaged in protected activity, the Court notes that citizens do not relinquish all of their First Amendment rights when they become public employees, like Plaintiff. *See Pickering v. Board of Education*, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Under the first prong of the First Amendment retaliation cause of action, Plaintiff must first make a showing that the speech addressed a matter of public concern. *See Hoover*, 123 F.Supp.2d at

---

**2.** According to Plaintiff, the Board of Education suspended Mr. Camp for three days without pay and revoked his computer privi-
leges for downloading pornographic Web sites depicting teenage girls onto the school's computer. *See id., supra.*

419 (citing *Connick v. Myers,* 461 U.S. 138, 143, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). Whether speech addresses a matter of public concern is a question of law to be determined from the content, form, and context of the speech. *See id.* (citation omitted). Further, a matter of public concern involves a matter of political, social, or other concern to the community. *See id.* (citing *Jackson v. City of Columbus,* 194 F.3d 737, 746 (6th Cir.1999)).

■ "When a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Campbell v. Hamilton County,* 23 Fed. Appx. 318, 327–28 (6th Cir.2001) (quoting *Connick,* 461 U.S. at 147, 103 S.Ct. 1684), unpublished. To determine whether speech is on a matter of public concern, a court must question the extent to which the speech advances an idea transcending personal interest or opinion which impacts our social and/or political lives. *See id.* Once speech is deemed a matter of public concern, the Court must then balance the rights of the speaker versus the rights of the public entity.

■ "If the speech is found to be a matter of public concern, the speech must be balanced against, and outweigh 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Hoover,* 123 F.Supp.2d at 419 (quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731). When conducting this balancing test, the Sixth Circuit directs this Court to consider such factors as whether an employee's comments meaningfully interfere with the performance of her duties, undermine the legitimate goal or mission of the employer,

create disharmony among co-workers, impair discipline by supervisors, or destroy the relationship of loyalty and trust required of confidential employees. *See id.* (quoting *Williams v. Commonwealth of Ky.,* 24 F.3d 1526, 1536 (6th Cir.1994)). Overall, the ultimate question of whether speech is protected is an issue of law for the court to decide. *See Langford v. Lane,* 921 F.2d 677, 681 (6th Cir.1991).

■ This Court finds that Plaintiff's statements concerning Defendants' disciplinary measures taken against Mr. Camp are a matter of public concern. At an administrative meeting and a public meeting, Plaintiff criticized the school board for lax disciplinary action; in particular, Plaintiff decried the school board decision to reprimand and suspend Mr. Camp for three (3) days, while at roughly the same time issuing him a contract to coach the junior varsity girl's softball team. *See* ECF Dkt. # 46, exhibit B at ¶¶ 6, 8. The Sixth Circuit has expressly stated that, "Freedom to criticize public officials and expose their wrongdoing is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment." *Lucas v. Monroe County,* 203 F.3d 964, 973 (6th Cir.2000) (quotation omitted). The First Amendment protects an American citizen's right to voice concerns, criticize government bodies and advocate peacefully for change. *See id.*

It is plainly obvious to this Court that the disciplinary action taken against a teacher and a coach of young girls, who indulges in the objectification and exploitation of young girls via the Internet, particularly while utilizing school computers, is a matter of community and societal concern. Further, Plaintiff's speech does advance several ideas transcending the Plaintiff's own personal interest or opinion, namely, the integrity of the district's teachers and

the safety of the students within the district.

Since this Court finds that Plaintiff's speech is a matter of public concern, it now turns to balancing Plaintiff's speech against the interests of Defendants in promoting the efficiency of its educational system. Other than citing the relevant law on this issue, Defendants fail to argue the constitutional status of Plaintiff's speech. *See* ECF Dkt. # 35 at 17. Defendants, in fact, preface other arguments by assuming that Plaintiff engaged in protected speech. *See id.* Since Defendants do not argue that Plaintiff's speech implicates the efficiency of the school district, this Court assumes that such speech does not negatively affect the school district's operation. Given that this Court finds Plaintiff's speech to be a matter of public concern which does not affect the efficiency of the school district, this Court naturally concludes that Plaintiff's speech outweighs the interests of Defendants in promoting the efficiency of the school system. Thus, this Court holds as a matter of law that Plaintiff engaged in protected activity when she voiced concerns, at an administrative and school board meeting, to the Defendants regarding their disciplinary treatment of Mr. Camp.

### 2. Adverse Action

The second prong of the retaliation claim requires Plaintiff to show that Defendants' adverse action caused Plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity. *See Thaddeus–X v. Blatter*, 175 F.3d 378, 396 (6th Cir.1999). The term "adverse action" is drawn from employment case law; examples in that context include discharge, demotions, refusal to hire, *non-renewal of contracts*, and failure to promote. *See id.* (emphasis added). In its inquiry, the Court first looks to the type of adverse action involved. *See Hoover*, 123 F.Supp.2d at 420.

█ In the case *sub judice*, Plaintiff asserts that the Superintendent originally advised Plaintiff that she would recommend her for a three-year contract renewal as principal. *See* ECF Dkt. # 46 at 3–4 (citations omitted). After Plaintiff's statements during an administrative meeting regarding Mr. Camp, Plaintiff asserts that the Superintendent informed her that she would be recommending only a one-year principal's contract, which Plaintiff denies that she rejected. *See id.*, exhibit b at ¶¶ 6, 7. Then, after the March 21, 2000 school board meeting in which Plaintiff made further statements concerning Mr. Camp, and the school board did not discuss or vote on Plaintiff's one-year principal's contract offer contained on the agenda, Plaintiff claims that Defendants offered her a two-year contract as a grant writer. *See* ECF Dkt. # 46 at 3–4 (citations omitted). Thus, in sum, Plaintiff contends that Defendants' non-renewal of her three-year contract as principal and subsequent offer of a two-year grant writing contract amounts to an "adverse action" under the law.

This Court finds that Plaintiff has established the second element of her retaliation claim for the purposes of making out a prima facie case, *i.e.*, that Plaintiff suffered an adverse employment action that would likely chill a person of ordinary firmness from continuing to engage in First Amendment protected activity. Plaintiff has presented evidence that Defendants took adverse action against her.

Plaintiff's three-year principal contract was not renewed and this fact is undisputed by the parties. A non-renewal of a contract can be an adverse employment action. *See e.g., Board of County Com'rs, Wabaunsee County, KS. v. Umbehr*, 518 U.S. 668, 116 S.Ct. 2342, 135 L.Ed.2d 843

(1996) (non-renewal of contract is adverse action); *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (same).

Nevertheless, there is a dispute as to whether Plaintiff indicated she would reject a one-year principal's contract offer by Defendants. Based upon poor performance, Defendants contend that weeks before the protected speech they decided to offer Plaintiff a one-year principal's contract and that when notified of this on March 17, 2000, Plaintiff indicated that she would reject any such offer. *See* ECF Dkt. # 37 at 5, ¶ 18. Plaintiff admits that the Superintendent advised Plaintiff that she would be recommending Plaintiff for a one-year principal's contract on March 17. *See* ECF Dkt. # 46, exhibit B at ¶ 7. But, Plaintiff counters that she never indicated she would reject a one-year principal's contract and the Board of Education never considered the one-year offer, even though it was listed on the agenda of its March 21, 2000 meeting. *See id.*

Defendants also state that once Plaintiff indicated that she would reject a one-year principal's offer, they offered Plaintiff a two-year grants developer position, which she also rejected. *See* ECF Dkt. # 37 at 5, ¶ 24. Urging dismissal of the retaliation action, Defendants ask this Court to find as a matter law that the two-year grants developer position is a lateral transfer from the principal's position and thus, not actionable as an adverse employment action. However, this court notes that transfers and other deprivations less harsh than dismissal can constitute legally adverse personnel decisions. *See Black v. Columbus Public Schools,* 124 F.Supp.2d 550, 577 (S.D.Ohio 2000).

The Sixth Circuit recently commented that, "An employee's rejection of a lateral transfer is always actionable as an adverse employment action *if the conditions of the transfer would have been objectively intol-* erable to a reasonable person, thereby amounting to constructive discharge." *Strouss v. Michigan Department of Corrections,* 250 F.3d 336, 341 (6th Cir.2000) (emphasis added). Changes in job duties or responsibilities should be considered when determining whether a lateral transfer would be intolerable to a reasonable person. *See Darnell v. Campbell County Fiscal Court,* No. 90–5453, 924 F.2d 1057, 1991 WL 11255 *3, (6th Cir. February 1, 1991) (citation omitted), unpublished. The responsibilities and duties inherent in a principal's job juxtaposed against the grant writing position clearly establish an issue of material fact as to whether the conditions of Plaintiffs transfer would have been "objectively intolerable to a reasonable person."

Overall, Plaintiff has provided prima facie evidence to satisfy the second element of her retaliation claim. However, issues of material fact exist which preclude this Court from finding that Plaintiff did suffer an adverse employment action as a matter of law.

### 3. Motivation

The third element of the retaliation claim delves into Defendants' motivation for taking an adverse action. In the Sixth Circuit, it is enough that the adverse action was motivated at least in part as a response to the exercise of the a plaintiff's constitutional rights. *See Hoover,* 123 F.Supp.2d at 419. The third element requires a showing of a causal connection between the protected speech and the adverse action. *See id.*

The third prong of the retaliation claim normally requires a determination of fact for a jury or the court in its fact-finding role. *See Perry v. McGinnis,* 209 F.3d 597, 604 (6th Cir.2000). When a defendant's intent is at issue, summary judgment is particularly inappropriate. *See*

*Hoover,* 123 F.Supp.2d at 419. At the core of this inquiry are matters of both credibility assessments and issues of motive and intent. Summary judgment is ill-suited for credibility determinations and likewise an inadequate procedure for sorting out nebulous questions of motivation. *See Honore v. Douglas,* 833 F.2d 565, 569 (5th Cir.1987).

Based upon Plaintiff's qualifications and experience as a teacher and administrator, along with her testimony concerning Defendants' representations about the length of her next contract, the Court finds that Plaintiff has produced prima facie evidence that Defendant's were at least, in part, motivated by Plaintiff's protected speech when Defendants' did not renew Plaintiff's three-year contract as principal. Taking heed from the employment law context, this Court is also mindful that there are many sources of circumstantial evidence that, theoretically, can demonstrate retaliation in a way sufficient to leap the summary judgment hurdle. *See Mesnick v. General Elec. Co.,* 950 F.2d 816, 828 (1st Cir.1991). These include the temporal proximity of an employee's protected activity to an employer's adverse action and comments by the employer which intimate a retaliatory mind set. *See id.* This Court notes first the temporal proximity between Plaintiff's protected speech on March 16 and 21, 2000, and the first alleged notice Plaintiff received that her three-year contract would not be renewed by Defendants on March 17, 2000. Second, the Court notes the allegation that one member of the school board, Defendant Santiago, told parents that Plaintiff was "being punished" for her behavior at the school board meeting on March 21, 2000. *See* ECF Dkt. # 50 at 11.

On the other hand, Defendants argue vehemently citing to numerous discovery documents that they did not renew Plaintiff's three principal contract due to Plain-tiff's poor job performance, which escalated during the 1999/2000 school year. *See* ECF Dkt. # 35 at 4–9 (quotations omitted). More specifically, due to Plaintiff's performance problems, Defendants contend that the Superintendent only intended to offer Plaintiff a one-year contract renewal as principal and, that most importantly, this decision was made prior to Plaintiff's protected speech. *See* ECF Dkt. # 58 at 2–3 (quotation omitted). Further, after Plaintiff's statements regarding Mr. Camp at the administrative meeting on March 17, 2000, Defendants assert that the Superintendent met with Plaintiff and clarified that she would recommend a one-year principal's contract for Plaintiff, which Plaintiff flatly rejected. *See* ECF Dkt. # 37 at ¶ 17. Then, only after Plaintiff's refusal of the one-year principal's contract, Defendants claim they offered Plaintiff a two-year grant writing position. *See id.* at ¶ 22. In summary, Defendants contend that the non-renewal of Plaintiff's three-year principal contract was not motivated in any way by the exercise of the Plaintiff's First Amendment rights. Rather, Defendants argue that they had decided to offer Plaintiff a one-year contract a few months before Plaintiff's protected speech due to her poor performance, and that her rejection of the one-year principal contract prompted the offer of the two-year grant writing position. In sum, this Court finds it readily apparent that questions of fact abound as to the Defendants' motivation not to renew Plaintiff's three-year principal contract.

Based upon the evidence presented by Plaintiff, the Court finds that Plaintiff has sufficiently established the elements of a prima facie case of retaliation.

### 4. Rebutting the Plaintiff's Retaliation claim

Because Plaintiff has successfully established the three elements of her First

Amendment retaliation claim for purposes of the summary judgment stage, the burden of persuasion shifts to Defendants. To defeat Plaintiff's claim at trial, Defendants must show by a preponderance of the evidence that they would have not have given Plaintiff a three-year principal's contract renewal even had she not engaged in constitutionally protected activity. *See Cockrel v. Shelby County School Dist.,* 270 F.3d 1036, 1057 (6th Cir.2001). To defeat Plaintiff's claim on a motion for summary judgment, however, a substantially higher hurdle must be surpassed, particularly where, as is the case here, the moving party bears the ultimate burden of persuasion on this issue at trial. *See id.*

Summary judgment in favor of the party with the burden of persuasion is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact. *See Cockrel,* 270 F.3d at 1057. Thus, because Plaintiff has established the elements of her claim for First Amendment retaliation, summary judgment for Defendants is proper only if the evidence is such that every reasonable juror would conclude that Defendants have met their burden of showing that the non-renewal of the three-year principal's contract would have occurred even if Plaintiff had not spoken about Mr. Camp at the administrative meeting and the school board meeting. *See id.* In this case, Defendants have not met this burden, and this Court believes that a genuine issue of material fact exists from which a reasonable jury could conclude that Plaintiff's three-year principal contract would have been renewed had she not engaged in constitutionally protected activity. *See id.*

Thus, this Court concludes that it is the jury's province to sort through and decide Defendants' motivation in not renewing Plaintiff's three-year principal's contract. The Court reaches this conclusion because a reasonable jury could conclude that the asserted basis for the non-renewal of Plaintiff's three-year contract could have been based in part upon Plaintiff's protected expression.

For the foregoing reasons, this Court DENIES Defendants' Motion for Summary Judgment on Plaintiff's § 1983 First Amendment retaliation claim.

### B. §§ 1985 and 1986 Conspiracy Claims

Plaintiff asserts §§ 1985 and 1986 claims against Defendants, alleging that they conspired to violate her free speech rights. *See* ECF Dkt. # 1 at ¶¶ 29–40. This Court concludes, after a fair reading of Plaintiff's conspiracy count, that she is specifically asserting a claim under the third of three prongs of the § 1985 statute, "To assert an actionable claim under § 1985(3), a claimant must show that: 1) the defendants conspired for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 2) the defendants committed acts that deprived the claimant of having and exercising any right or privilege of a citizen of the United States." *Bartell v. Lohiser,* 215 F.3d 550, 559–560 (6th Cir. 2000).

The Supreme Court narrowed the reach of this statute holding that § 1985(3) requires, *inter alia,* that a claimant establish "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* (quoting *United Brotherhood of Carpenters and Joiners of America v. Scott,* 463 U.S. 825, 829, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). Thus, Plaintiff must show the conspiracy was motivated by racial or other class-based animus. *See Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993).

Based upon these Supreme Court's directives, this Court examined Plaintiff's pleadings and the repository of discovery filed by the parties. It is obvious to this Court that Plaintiff did not allege, let alone prove, that the alleged conspiracy was motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus. *See United Brotherhood of Carpenters and Joiners of America,* 463 U.S. at 829, 103 S.Ct. 3352. Further, a class or person protected by § 1985(3) must also possess the characteristics of a discrete and insular minority, such as race, national origin, or gender. *See Haider v. Michigan Technological University,* No. 95–2026, 89 F.3d 833, 1996 WL 341166, *2 (6th Cir. June 19, 1996), unpublished. A plaintiff must plead membership in a protected class and discrimination based upon such membership in order to avoid dismissal of a § 1985 claim. *See Norris v. Stark County, Ohio,* No. 94–4142, 51 F.3d 272, 1995 WL 149137, *2 (6th Cir. April 4, 1995), unpublished. While Plaintiff is a female, she does not allege that Defendants' conduct was motivated by gender-based spite.

Summary judgment is therefore proper as to Plaintiff's §§ 1985 and 1986 claims because she has neither alleged nor proven that the alleged conspiracy was motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus. Additionally, because there is no valid claim under § 1985, Plaintiff's § 1986 claim also fails by definition. *See Walker v. Lautner,* No. 95–1064, 57 F.3d 1072, 1995 WL 358264, *2 (6th Cir. June 14, 1995) (citing 42 U.S.C. § 1986), unpublished. Dismissal is proper as to Plaintiff's § 1986 claim because § 1986 contains no substantive provisions. *See Norris,* 51

F.3d 272, 1995 WL 149137, *2 (citing 42 U.S.C. § 1986).

For the foregoing reasons, this Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's §§ 1985 and 1986 conspiracy claims.

## C. Invasion of Privacy Claim

Plaintiff also asserts an invasion of privacy claim in her complaint. *See* ECF Dkt. # 1, ¶¶ 41–44. However, Plaintiff does little more than announce that Defendants' conduct constituted an invasion of privacy. *See id.* at ¶¶ 42, 44. There are four branches of the tort of invasion of privacy: appropriation of one's name or likeness, publicity that places one in a false public light, unreasonable publicity of one's private life, and wrongful intrusion into private activities. *See Proffitt v. International Paper Co.,* 953 F.Supp. 207, 211 n. 2 (S.D.Ohio 1996) (citation omitted). Other than the appropriation and false light claims, the other branches of this tort mandate actions that delve into one's personal or private life.

In her deposition, Plaintiff testified that some Defendants generated publicity by writing letters to a newspaper portraying her as a unfit administrator. *See* ECF Dkt. # 50 at 4, 21.[3] Plaintiff also maintained that several of the Defendants made derogatory remarks about her out of her presence. *See id.* at 25. When questioned about invasion of privacy, Plaintiff exclaimed in her deposition, "My *public image* at this point is ruined . . . My career is destroyed and it doesn't get more *personal* than that." *See id.* at 5 (emphasis added). Plaintiff's testimony is clearly geared toward establishing liability under the "false light" branch of the tort of invasion of privacy as she has not alleged nor

---

**3.** Plaintiff did testify that one board member questioned her about her home life during a telephone call, but she did not provide any specifics as to the conversation. *See* ECF Dkt. # 50 at 14.

proven that any of the Defendants publicized or intruded any part of her personal life.

However, the Ohio Supreme Court has declined to recognize a cause of action for false light invasion of privacy. *See M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 507, 634 N.E.2d 203 (1994). Thus, Plaintiff's insinuations that Defendants' actions make them liable under the "false light" branch of the tort of invasion of privacy are a non-starter under Ohio law. Based upon Ohio law and Plaintiff's failure to plead or prove any intrusions or publicity concerning her personal life, this Court dismisses Plaintiff's invasion of privacy claim.

For the foregoing reasons, this Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's invasion of privacy claim.

### D. Notice Provision Claim under Ohio Revised Code § 3319.02(C)

■ Plaintiff also claims that Defendants violated Ohio Revised Code § 3319.02(C). *See* ECF Dkt. # 1 at ¶¶ 49–51. Plaintiff asserts that section 3319.02 required the Defendant Board of Education to notify her of the non-renewal of her previous three-year contract in writing and its failure to do so resulted in an automatic two-year renewal of her contract as a principal. *See* ECF Dkt. # 34 at 11.[4] R.C. § 3319.02(C) states, in pertinent part,

An assistant superintendent, *principal,* assistant principal, or other administrator *is, at the expiration of the current term of employment, deemed reemployed at the same salary* plus any in-

crements that may be authorized by the board, unless such employee notifies the board in writing to the contrary on or before the first day of June, or *unless such board, on or before the last day of March of the year in which the contract of employment expires, either reemploys such employee for a succeeding term or gives written notice of its intention not to reemploy the employee.* The term of reemployment of a person reemployed under this paragraph shall be one year, except that if such person has been employed by the school district or service center as an assistant superintendent, principal, assistant principal, or other administrator for three years or more, the term of reemployment shall be two years.

R.C. § 3319.02 (emphasis added). Since Plaintiff's three-year contract expired on June 30, 2000, the statute requires that Plaintiff be given written notice of the Board of Education's intention not to re-employ Plaintiff by March 31, 2000. *See id.*

Contrary to Plaintiff's allegations, this Court finds that Plaintiff was given written notice of the Board of Education's intention not to re-employ Plaintiff by March 31, 2000. The Superintendent sent Plaintiff an interoffice memorandum dated March 27, 2000. *See* ECF Dkt. # 42, Plaintiff's exhibit 25. In the memorandum, the Superintendent confirmed that Plaintiff's contract would be renewed for one-year. *See id.* The memorandum reads,

On Friday, March 17, 2000, I informed you of your one-year contract renewal.

---

4. Plaintiff also asserts that Defendants failed to comply with Ohio Revised Code evaluation requirements. *See* ECF Dkt. # 34 at 11. These alleged failures, even if true, are not actionable under Ohio law. *See, e.g., State ex rel. Martines v. Cleveland City School Dist. Bd. of Edn.,* 70 Ohio St.3d 416, 639 N.E.2d 80

(Ohio 1994), *reconsideration denied* 71 Ohio St.3d 1407, 641 N.E.2d 204 (board of education's failure to observe statutory evaluation and hearing requirements when deciding not to renew school administrator's contract did not require administrator's reinstatement).

Your response was blatantly insubordinate. You stated, "I will not accept a one-year contract. You will either renew my contract for three years or you will non-renew me and then there will be a mutiny in the this community. I will not work under your thumb."

*Id.* (emphasis added). Plaintiff responded by sending a memorandum to the Superintendent dated March 27, 2000, stating, *"The memo issued to me in your office at 10:55 the morning March 27* is totally fabricated and untruthful. Please place this rebuttal in my Personnel File." ECF Dkt. # 42, Plaintiff's exhibit 26 (emphasis added). In her deposition, Defendants asked Plaintiff about the March 17, 2000 meeting between Plaintiff and Superintendent. *See* ECF Dkt. # 49 at 158–159. The relevant portion of the deposition, follows, in pertinent part,

Q. What was discussed?

A. She brought me in her office and sat me down *and said I am giving you a one-contract.*

Q. Did she say, and again I know it's late in the day, but this is important to me and I want to know your exact recollection of this, did she say, I am giving you or I am recommending you for, the emphasis I'm giving is versus recommending?

A. I don't remember. All I heard was one-year contract. I think—

Q. All right. And that was the first time—

A. —I'm sorry.

Q. That was the first time that you discovered that the Superintendent was either *going to give or recommend to* the Board a one-year contract to you as Principal or Westwood School, is that correct?

A. That's correct.

ECF Dkt. # 49 at 158–159 (emphasis added). Plaintiff's testimony clearly establishes that the Superintendent told Plaintiff that she was to receive a one-year, not a three-year renewal of her principal's contract. *See id.* Further, the documentary evidence demonstrates that Plaintiff received written notice on March 27, 2000, that her three-year contract would not be renewed because she had been offered a one-year contract.

In *State ex rel. Willbond v. Oberlin School Dist., Oberlin Bd. of Edn.*, 94 Ohio App.3d 419, 423, 640 N.E.2d 1179, 1182 (Lorain 1994), the Ninth District Court of Appeals, applied section 3319.02(C), and held that a board of education complied with the notice provisions under Ohio law when it issued a one-year contract prior to the March 31 deadline to a school administrator who previously had a three-year contract. Since the board of education issued the plaintiff a one-year contract prior to the deadline, the Ninth District specifically found that the same board was not required under Ohio law to give the administrator written notice of its intention not to renew the administrator's three-year contract. *See id.*

Based upon the reasoning in *Willbond, supra*, this Court holds that Defendants complied with the notice provisions provided for in Ohio Revised Code R.C. § 3319.20(C) when the Superintendent served written notice upon Plaintiff, before the March 31 deadline, that she would be issued a one-year principal's contract. *See* ECF Dkt. # 42, Plaintiff's exhibit 25. Under the guidance provided for in *Willbond*, Defendants did not have to specifically express to Plaintiff in writing that her three-year contract was not to be renewed. Rather, Defendants' service of written notice upon Plaintiff, prior to the deadline, that she would be issued a one-year principal's contract passed muster pursuant to Ohio's notice provisions for school administrators. Thus, this Court finds that Plaintiff's claim alleging violation of Ohio Re-

vised Code R.C. § 3319.02(C) should be dismissed.

Plaintiff has also brought a negligence claim in her complaint. *See* ECF Dkt. # 1 at ¶¶ 45–48. Plaintiff explained in her deposition that she believed Defendants were negligent because they did not follow the procedural requirements provided for in the Ohio Revised Code. *See* ECF Dkt. # 49 at 186.[5] Since the Court holds that Defendants did comply with Ohio's notice provisions for school administrators, the Court finds no basis for Plaintiff's negligence claims and thus dismisses this claim as well.

For the foregoing reasons, this Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's negligence claim and notice claim under Ohio Revised Code § 3319.02(C).

## IV. CONCLUSION

Aside from Plaintiff's First Amendment Claim, the Undersigned notes that the remaining parts of Plaintiff's complaint constitute little more than a repackaging of her First Amendment Claim to fit other constitutional, federal and state law labels. Accordingly, this Court has found that these other claims could not survive summary judgment.

For the foregoing reasons, this Court denies Plaintiff's motion for summary judgment. The Court also grants in part and denies in part Defendants motion for summary judgment. More specifically, the Court grants Defendants' motion for summary judgment on Plaintiff's §§ 1985 and 1986, invasion of privacy, negligence, and Ohio Revised Code § 3319.02(C) notice provision claims. However, the Court denies Defendants' motion for summary

judgment on Plaintiff's § 1983 First Amendment retaliation claim.

IT IS SO ORDERED.

## ORDER

This order considers Plaintiff's motion for reconsideration of this Court's summary judgment order and two separate motions in *limine* filed by Defendants. *See* ECF Dkt. # 64, 67, 73. Plaintiffs moved this Court to reconsider its summary judgment order dismissing Plaintiff's Ohio Revised Code § 3319.02(C) notice claim. *See* ECF Dkt. # 67. In their first motion in *limine*, Defendants moved this Court to exclude certain statements allegedly made by a board member and the superintendent concerning the school board's motivation and intent during its interactions with Plaintiff. *See* ECF Dkt. # 64. In their second motion in *limine*, Defendants moved this Court to exclude any testimony regarding Plaintiff's appointment to carry, run or serve in any connection with the 2002 Olympic Games torch. *See* ECF Dkt. # 73. The Court addresses these motions seriatim.

### I. Plaintiff's Motion for Reconsideration

Plaintiff has petitioned the Court to reconsider its ruling dismissing Plaintiff's Ohio Revised Code § 3319.02(C) notice claim. *See* ECF Dkt. # 67. Before analyzing the merits of Plaintiff's motion to reconsider, the Court acknowledges the standard, and accompanying case law, governing petitions to reconsider pre-trial orders.

---

5. Plaintiff alleges violations of various procedural rules, such as Sunshine Law and Roberts Rules of Order violations, in its motion for partial summary judgment. *See* ECF Dkt. # 35. These alleged infractions are moot be-cause there are based upon meetings that occurred subsequent to the date that Defendants complied with Ohio's notice provisions for school administrators.

"Although 'motions to reconsider are not ill-founded step-children of the federal court's procedural arsenal,' they are 'extraordinary in nature and, because they run contrary to notions of finality and repose, should be discouraged.'" *McConocha v. Blue Cross and Blue Shield Mut. of Ohio,* 930 F.Supp. 1182, 1184 (N.D.Ohio 1996) (quoting *In re August, 1993 Regular Grand Jury,* 854 F.Supp. 1403, 1406 (S.D.Ind.1994)). "To be sure, 'a court can always take a second look' at a prior decision; but 'it need not and should not do so in the vast majority of instances,' especially where such motions 'merely restyle or re-hash the initial issues.'" *Id.* (quoting *In re August, 1993 Regular Grand Jury,* 854 F.Supp. at 1407). "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *Id.* (quoting *In re August, 1993 Regular Grand Jury,* 854 F.Supp. at 1408). Where a party views the law in a light contrary to that of this Court, its "'proper recourse' is not by way of a motion for reconsideration 'but appeal to the Sixth Circuit.'" *Id.* (quoting *Dana Corp. v. United States,* 764 F.Supp. 482, 489 (N.D.Ohio 1991)).

Motions for reconsideration of a judgment are construed as motions to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *See Moody v. Pepsi–Cola Metropolitan Bottling Co.,* 915 F.2d 201, 206 (6th Cir.1990). A motion under Fed.R.Civ.P. 59(e) is not an opportunity to re-argue a case, but rather is aimed at reconsideration, not initial consideration. *See Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir.1998). Parties should not file motions for reconsideration to raise arguments which could, and should, have been made before the issuance of judgment. *See id.* Motions under Fed.R.Civ.P. 59(e) must either clearly establish a manifest error of law or present newly discovered evidence.[1]

In her motion for reconsideration, Plaintiff does not mention any newly discovered evidence, but rather essentially argues that the Court made two manifest errors of law. *See* ECF Dkt. # 67. For the following reasons, the Court finds Plaintiff's motion for reconsideration to be without merit.

From the beginning of the instant case, Plaintiff has asserted that R.C. § 3319.02 required the Defendant board of education to notify Plaintiff of the non-renewal of her previous three-year contract in writing, and that the board of education's failure to do so resulted in an automatic two-year renewal of Plaintiff's contract as a principal. *See* ECF Dkt. # 34 at 11.

In its summary judgement order this Court rejected Plaintiff's contention, finding that Plaintiff was given written notice of the Board of Education's intention not to re-employ Plaintiff by the statutory cutoff date of March 31, 2000. *See* ECF Dkt. # 65 at 17. The Court based its holding upon an interoffice memorandum sent from the Superintendent to the Plaintiff

1. A motion for reconsideration is considered a Fed.R.Civ.P. 59(e) motion if it is filed within ten days of entry of judgment; if it is filed after that time, it falls under Fed.R.Civ.P. 60(b). *See Ford v. Troyer,* 25 F.Supp.2d 723, 725 (E.D.La.1998). Plaintiff filed her motion on December 3, 2001 following the Court's entry of judgment on November 19, 2001. See ECF Dkt. # 67. Plaintiff timely filed her motion. *See* Fed.R.Civ.P. 6(a) (when period of time prescribed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays are excluded from the time computation).

dated March 27, 2000. *See* ECF Dkt. # 42, Plaintiff's exhibit 25. In the memorandum, the Superintendent confirmed that Plaintiff's contract would be renewed, but for only one year, not three years. *See id.* The memorandum reads:

> On Friday, March 17, 2000, I informed you of your one-year contract renewal. Your response was blatantly insubordinate. You stated, "I will not accept a one-year contract. You will either renew my contract for three years or you will non-renew me and then there will be a mutiny in the this community. I will not work under your thumb."

*Id.* (emphasis added). Plaintiff responded by sending a memorandum to the Superintendent dated March 27, 2000, stating, *"The memo issued to me in your office at 10:55 the morning March 27 is totally fabricated and untruthful. Please place this rebuttal in my Personnel File."* ECF Dkt. # 42, Plaintiff's exhibit 26 (emphasis added). In deposition testimony, Plaintiff also admitted that the superintendent notified her on March 17 that her new contract would only extend a year, not three years.[2]

In her motion for reconsideration Plaintiff submits that Defendants failed to comply with R.C. § 3319.02(C) in two respects. *See* ECF Dkt. # 67 at 3. First, Plaintiff attacks this Court's order by arguing that the superintendent, not the board of education, provided written notice to Plaintiff of the non-renewal of her three year contract as principal. *See id.* Plaintiff emphatically states that the superintendent's memorandum did not pass statutory muster since R.C. § 3319.02(C) specifically provides that the board of education must provide written notice to Plaintiff by the March 31 cutoff date. *See id.* at 4. Second, Plaintiff contends that the superintendent's memorandum failed to the adhere to R.C. § 3319.02(C) because the memorandum did not state that Plaintiff would be non-renewed, but rather explicitly put forward a one year contract extension. *See id.* Plaintiff contends that the statute mandates an explicit written statement of non-renewal. *See id.*

Turning to Plaintiff's two contested errors of law, the Court returns to examine Ohio's Notice Provision statute governing the automatic contract renewal of school principals, *inter alia.* R.C. § 3319.02(C) states, in pertinent part,

> An assistant superintendent, principal, assistant principal, or other administrator is, at the expiration of the current term of employment, deemed reemployed at the same salary plus any increments that may be authorized by the board, unless such employee notifies the board in writing to the contrary on or before the first day of June, or *unless such board,* on or before the last day of March of the year in which the contract of employment expires, either reemploys such employee for a succeeding term or

---

2. In her deposition, Defendants asked Plaintiff about the March 17, 2000 meeting between Plaintiff and Superintendent. *See* ECF Dkt. # 49 at 158–159. The relevant portion of the deposition, follows, in pertinent part,

> Q. What was discussed?
> A. She brought me in her office and sat me down *and said I am giving you a one-contract.*
> Q. Did she say, and again I know it's late in the day, but this is important to me and I want to know your exact recollection of this, did she say, I am giving you or I am recommending you for, the emphasis I'm giving is versus recommending?
> A. I don't remember. All I heard was one-year contract. I think—
> Q. All right. And that was the first time—
> A.—I'm sorry.
> Q. That was the first time that you discovered that the Superintendent was either going to give or recommend to the Board a one-year contract to you as Principal of Westwood School, is that correct?
> A. That's correct.
>
> ECF Dkt. # 49 at 158–159 (emphasis added).

*gives written notice of its intention not to reemploy the employee.* The term of reemployment of a person reemployed under this paragraph shall be one year, except that if such person has been employed by the school district or service center as an assistant superintendent, principal, assistant principal, or other administrator for three years or more, the term of reemployment shall be two years.

R.C. § 3319.02(C) (emphasis added). In her first assigned error of law, Plaintiff emphasizes the differentiation between the board of education and the superintendent. *See* ECF Dkt. # 67 at 3. Plaintiff argues that compliance with the statutory notice provision mandates written notification come from the board of education, exclusively. *See id.* Plaintiff contends that the superintendent's memorandum did not constitute sufficient notice as required by the notice statute, since it was authored and sent by the superintendent, who is not a board member. *See id.* at 4.

 Plaintiff ignores the fact that the superintendent " . . . of a school district shall be the executive officer for the board." R.C. § 3319.01. Given that the superintendent is the executive officer of the board of education, when the superintendent acts, she acts on behalf of the board. *See Commons v. Westlake City Schools Bd. of Edn.,* 109 Ohio App.3d 706, 712, 713, 672 N.E.2d 1098, 1102. In particular, Ohio's own attorney general opined that the superintendent of a school district has sole power to assign or reassign principals to schools within the district. *See* R.C. § 3319.01 (citing OAG Opinion 72–072). Based upon the statutory grant afforded to superintendent, the Court finds that the superintendent's memorandum sent to Plaintiff on March 27, 2001 was an action on behalf of the board and therefore constituted sufficient notice of the board's intention not to renew Plaintiff's three

year principal contract. *See* ECF Dkt. # 42, Plaintiff's exhibit 25.

 Nevertheless, even assuming the superintendent's memorandum does not constitute sufficient notice under Ohio law, the Court finds that other documentation exists that does not suffer from the superintendent memorandum's alleged infirmity. Prior to the statutory cutoff date, the Defendant Wellington Exempted Village Schools Board of Education issued an agenda giving Plaintiff notice of its intention not to renew Plaintiff's three year principal contract. *See* ECF Dkt. # 46, Lewis Galante Deposition, Plaintiff's Exhibit 2.

On March 21, 2000, ten days prior to the statutory notice deadline, Defendant Wellington Exempted Village Schools Board of Education held a special session. *See* ECF Dkt. # 46, Lewis Galante Deposition at 27. The agenda for this special session contained the following:

> It is recommended that Nancy Fisher, Westwood Elementary School Principal, be issued a new one-year contract effective August, 2000, with the condition that prior to July 1, 2000, said principal shall be subject to a comprehensive medical examination as stated in the newly issued contract and her salary set at the appropriate level on the Administrative Salary Schedule.

ECF Dkt. # 46, Lewis Galante Deposition, Plaintiff's Exhibit 2. In her complaint, Plaintiff admits being present at the March 21, 2000 school board session and that the agenda contained her one year contract offer. *See* ECF Dkt. # 1 at 20; *see also* ECF Dkt. # 34 at 4. This agenda, propounded by the Defendant Wellington Exempted Village Schools Board of Education, clearly establishes that the board gave notice to Plaintiff of its intention that it would not consider let alone offer Plaintiff a three year renewal of her principal

contract prior to the statutory cutoff date of March 31. *See id.*

Ohio's notice provision only requires that the board give written notice of its intention not to reemploy the employee. *See* R.C. § 3319.02(C). This Court finds that the agenda, *supra,* clearly gave Plaintiff written notice of the board's intention not to renew Plaintiff's three year principal contract by the statutory deadline. *See* ECF Dkt. # 46, Lewis Galante Deposition, Plaintiff's Exhibit 2.

In Plaintiff's second assigned error of law, she contends that the superintendent's memorandum failed to the adhere to R.C. § 3319.02(C) because the memorandum did not state that Plaintiff would be non-renewed, but rather explicitly put forward a one year contract extension. *See id.*[3] Plaintiff contends that the notice statute mandates an explicit written statement of non-renewal. *See id.*

Ohio courts, though, have held that the notice statute does not mandate an explicit written statement of non-renewal. *See infra.* In *State ex rel. Willbond v. Oberlin School Dist., Oberlin Bd. of Edn.,* 94 Ohio App.3d 419, 423, 640 N.E.2d 1179, 1182 (Lorain 1994), the Ninth District Court of Appeals, applied section 3319.02(C), and held that a board of education complied with the notice provisions under Ohio law when it issued a one year contract prior to the March 31 deadline to a school administrator who previously had a three year contract. Since the board of education issued the plaintiff a one year contract prior to the deadline, the Ninth District specifically found that the same board was not required under Ohio law to give the administrator written notice of its intention not to renew the administrator's three year contract. *See id.*

Based upon the reasoning in *Willbond, supra,* this Court reaffirms its holding that Defendants complied with the notice provision provided for in Ohio Revised Code R.C. § 3319.20(C). Defendants complied with the notice statute, not only when the superintendent served written notice upon Plaintiff before the March 31 deadline that Plaintiff would be issued a one year principal's contract, but when the board issued an agenda dated March 21, 2000, which clearly gave Plaintiff notice of the board's intent not to renew Plaintiff's three year principal contract. *See* ECF Dkt. # 42, Plaintiff's exhibit 25, ECF Dkt. # 46, *and* Lewis Galante Deposition, Plaintiff's Exhibit 2.

Under the guidance provided for in *Willbond,* Defendants did not have to specifically express to Plaintiff in writing that her three-year contract was not to be renewed. Rather, Defendants' written notice(s) of its intention to offer Plaintiff a one year principal contract evidenced by the superintendent's memorandum and board agenda plainly constitute board compliance with Ohio's notice provisions for school administrators. For these aforementioned reasons, the Court DENIES Plaintiff's motion for reconsideration. *See* ECF Dkt. # 67.

## II. Motion to Exclude Certain Alleged Statements by a Board Member and the Superintendent

Defendants filed a motion in *limine* moving this Court to preclude Plaintiff from proffering testimony, including any documentary evidence of oral or written representations, and oral statements by anyone or any entity purporting to be representations or statements concerning the intentions or motivations of the Wellington Exempted Village Schools Board of

---

**3.** The Court surmises that Plaintiff would argue that the board's agenda from the March 21, 2000 board meeting "suffers" from the same affliction.

Education. *See* ECF Dkt. # 64. Defendants also requested that this exclusion apply to opening statements and closing arguments of counsel, as well as any comment in front of or which can be heard or seen by the jury. *See id.*

 Defendants filed this motion to forestall the introduction of two lines of testimony. *See* ECF Dkt. # 64. First, Defendants surmise that Plaintiff intends to call two witnesses who will testify that a board member told them that the board did not renew Plaintiff's contract as a principal due to Plaintiff's public criticism of Defendants for their handling of the Gerald Camp situation. *See id.* Second, Defendants believe that Plaintiff will testify that the superintendent "guaranteed" Plaintiff that her contract as principal of Westwood Elementary would be renewed for an additional three years. *See id.*

More specifically, Defendants expect Plaintiff will attempt to introduce witness testimony that attribute statements to a particular board member made outside of a regular school board meeting, the purpose of which is to attribute such statements to the entire school board. *See* ECF Dkt. # 64 at 2. Defendants predict that Plaintiff intends to call two witnesses, Diane Monschein and Kim Hinkle, who will testify that a board member, Ivan Santiago, after a school board meeting, said that the board did not return Plaintiff to her position as principal because of Plaintiff's criticism of the board's handling of Gerald Camp. *See id.*

Defendants also surmise that Plaintiff will attempt to introduce testimony that the superintendent *made statements to* Plaintiff concerning the renewal of Plaintiff's contract of employment, to the effect that Plaintiff's contract was guaranteed for another three years. *See* ECF Dkt. # 64 at 2. Even though Defendants deny that the statements attributed to Ivan Santiago or the superintendent were ever made,

they argue that such testimony is inadmissible and should be excluded. *See id.*

Defendants rest their argument for the inadmissibility of these alleged statements by relying on various Ohio cases and state statutory provisions. *See* ECF Dkt. # 64 at 3. In sum, Defendants citations put forth the proposition that individual members may not bind a board of education by their individual statements. *See id.* (citing, *inter alia*, *Wolf v. Cuyahoga Falls City School Dist. Bd. Of Education*, 52 Ohio St.3d 222, 556 N.E.2d 511 (1990)). Defendants also announce that the overriding principle in the instant case is that a board of education cannot be held liable nor bound by unauthorized oral representations of its agents or its individual Board members. *See id.* (citing *Walker v. Lockland City School District Bd. Of Edn.*, 69 Ohio App.2d 27, 429 N.E.2d 1179 (1980)).

Plaintiff rightly counters by suggesting that Defendants rely upon cases concerning a board's liability for contracts entered into by board members or agents of the board without approval. *See* ECF Dkt. # 68 at 4. The instant case concerns an alleged violation of the First Amendment and Defendants' reliance upon primarily contractual case law is not persuasive.

In its summary judgment ruling, the Court determined that one of the remaining facts in dispute is whether the alleged adverse action taken against Plaintiff was motivated at least in part as a response to the exercise of the Plaintiff's constitutional rights. *See* ECF Dkt. # 65 at 11, 14. The testimony Defendants seek to exclude is highly relevant to this factual issue of motivation because it offers a window into the Defendants' policy making decision as they dealt with Plaintiff during the winter and spring months of 2000. School boards can be subject to liability under a § 1983 claim if its employees, acting to further board policy, injure the Plaintiff. *See Hall v.*

*Marion School Dist. No. 2,* 31 F.3d 183 (4th Cir.1994) (school district was liable under § 1983 for school board's dismissal of teacher in violation of First Amendment, notwithstanding contention that superintendent and principal, neither of whom had final policy-making authority, were responsible for violation of teacher's rights; school board was final policy maker with regard to employment and discharge of teachers, and board was fully apprised of all of superintendent's actions and condoned each of them).

Due to the exceedingly relevant nature of this evidence, the Court finds that the disputed testimony of Ivan Santiago, concerning the board's actions toward Plaintiff, and Plaintiff's testimony regarding the alleged "guarantees" by the superintendent are admissible. The Court reminds the parties that credibility determinations are for the jury, not for reviewing court. *See U.S. v. Tackett,* 113 F.3d 603 (6th Cir.1997). Witness credibility is solely within the jury's province. *See U.S. v. L.E. Cooke Co., Inc.,* 991 F.2d 336, 343 (6th Cir.1993). Defendant will have the opportunity to cross-examine these witnesses and develop other testimony to counter the effect of these alleged statements. *See* U.S. CONST amend VI. For the foregoing reasons, Defendants motion in limine to exclude certain alleged statements by a board member and the superintendent is hereby DENIED. *See* ECF Dkt. # 64.

## III. Motion to Exclude any reference to Plaintiff's election to carry, run or serve in any connection with the 2002 Olympic Games torch

■ Defendants filed a second motion in *limine* moving this Court for an order prohibiting Plaintiff, her counsel, or any other witness called on her behalf, from testifying or referring to the fact that Plaintiff, Nancy Fisher was elected to carry, run or serve in any connection with the 2002 Olympic Games torch. *See* ECF Dkt. # 73. Defendants contend that any mention of this fact to the jurors is irrelevant to the issues in dispute, is not admissible in evidence, and would only prejudice the jury and divert their attention from the issues to be decided by them. *See id.*

Rule 401 of the Federal Rules of Evidence sets forth the definition of relevant evidence, while Rule 402 states unequivocally, "Evidence which is not relevant is not admissible." Fed.R.Evid. 402. Relevant evidence is "... evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid 401. After this Court's summary judgment ruling, the facts in consequence remain (1) whether Defendants caused Plaintiff to suffer an adverse employment action likely to chill a person of ordinary firmness from continuing to engage in protected speech; and (2) whether the alleged adverse action was motivated at least in part as a response to the exercise of the Plaintiff's constitutional rights. *See* ECF Dkt. # 65 at 11.

The Court agrees with Defendants that Plaintiff's election to assist with the 2002 Olympic Games torch has no relevance to her performance as an elementary principal for the Wellington School District. *See* ECF Dkt. # 73. The Court also finds this piece of evidence does not tend to make the existence of either of the two remaining facts, *supra,* in consequence to the determination of the action more probable or less probable than it would without the evidence. *See* Fed.R.Evid 401.[4] The lag

---

4. Because the Court finds this evidence to be irrelevant, a Fed.R.Evid. 403 balancing analysis is not required.

in time between Plaintiff's appointment to assist with the Olympic torch and the facts underlying this action only support this Court's finding of irrelevance. *See id.* Thus, based upon the Federal Rules of Evidence coupled with the remaining facts in consequence, this Court hereby excludes any testimony or reference to Plaintiff's participation in or election to assist with the 2002 Olympic Games torch. *See* ECF Dkt. # 73. For these reasons, the Court GRANTS Defendant's motion in *limine* to exclude any reference to Plaintiff's election to carry, run or serve in any connection with the 2002 Olympic Games torch. *See id.*

## IV. Conclusion

For the foregoing reasons, the Court hereby DENIES Plaintiff's motion for reconsideration. *See* ECF Dkt. # 67. The Court also hereby DENIES Defendants motion in *limine* to exclude certain alleged statements by a board member and the superintendent. *See* ECF Dkt. # 64. Lastly, the Court hereby GRANTS Defendant's motion in *limine* to exclude any reference to Plaintiff's election to carry, run or serve in any connection with the 2002 Olympic Games torch. *See* ECF Dkt. # 73.

**IT IS SO ORDERED.**